411 So.2d 744 (1982)
Foster THOMAS, et al., Plaintiffs-Appellees,
v.
James M. JEANE, Defendant, and
The State of Louisiana, Defendant-Appellant.
No. 8719.
Court of Appeal of Louisiana, Third Circuit.
March 10, 1982.
David C. Kimmel, Asst. Atty. Gen., Baton Rouge, and Daryl Gold, Leesville, for defendant-appellant.
Simms, Tillman & Fontenot, E. C. Fontenot, Jr., Leesville, for plaintiffs-appellees.
Before DOMENGEAUX, SWIFT, and LABORDE, JJ.
DOMENGEAUX, Judge.
This is an action, brought by plaintiffs, Foster Thomas and Carl Ruffin, against defendants, James M. Jeane and the State of Louisiana, for personal injuries and property damage[1] resulting from a tree falling upon a vehicle in which they were sitting.
*745 On June 25, 1979, plaintiffs entered a recreational area in Vernon Parish, locally known as Anacoco Spillway Park, to fish in the lake which forms part of the park. This lake, as well as the park, is administered by defendant, State of Louisiana, through the Anacoco Prairie State Game and Fish Commission (State). The actual operation, maintenance, and development of the park is accomplished through a lease from the State to defendant, James M. Jeane (Jeane).
Plaintiffs entered the park in a pickup truck owned by plaintiff Thomas. They allege claims resulting from a live hickory tree falling upon their vehicle as they waited to launch their boat.
Trial was held on May 18, 1981. Judgment was rendered against both defendants, in solido, on August 21, 1981, and signed on August 31, 1981. Plaintiff Thomas was awarded the sum of Seven Thousand Twelve and 35/100 ($7,012.35) Dollars for personal injuries and property damage, and plaintiff Ruffin was awarded Five Hundred and no/100 ($500.00) Dollars for personal injuries. From this judgment the State has appealed.[2] We reverse in part.
There seems to be no doubt that a tree located in the park, owned by defendant State and administered by defendant Jeane through a lease with the Commission, collapsed and fell on plaintiff Thomas' vehicle. The primary issue on appeal is not whether such events occurred, but whether these events subject the State to liability under the law.
The State contends with merit that La. R.S. 9:2791 and La.R.S. 9:2795 limits the State's liability under the presented facts. The pertinent parts of these statutes provide as follows:
La.R.S. 9:2791:
"A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant give permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted...."
La.R.S. 9:2795:
"A. As used in this Section:
(1) `Land' means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.
(2) `Owner' means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
(3) `Recreational purposes' includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.
(4) `Charge' means the admission price or fee asked in return for permission to use lands.
(5) `Person' means individuals regardless of age.
B. Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(1) Extend any assurance that the premises are safe for any purposes.

*746 (2) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(3) Incur liability for any injury to person or property incurred by such person...."
The trial judge in his reasons for judgment made the following observations concerning the applicability of these two statutes, to-wit:
"Counsel for the State strongly asserts and argues the applicability of R.S. 9:2791 and 9:2795, the effect of which is to exempt the state, or other landowner, who allows his land to be used for recreational purposes, from liability for injuries that may be sustained by persons using the land for such purposes. Doubtless it was enacted for the purpose (perhaps among others) of encouraging large land owners to allow their lands to be used for parks, game management areas, and the like. The State concedes, however, that the exemption is inapplicable where commercial enterprises or endeavors for profit are involved.
The argument might be plausible were it not for the plain provisions of Exhibit P-2, the act of lease from the Commission to Mr. Jeane. Even a cursory reading thereof reflects that it imposes upon the lessee the duty to do things characteristic of an enterprise for profit, to maintain the property "pursuant to good business practice", and it allowed him to charge fees and to operate concessions.
I am cognizant of the exclusionary provisions of paragraph 4 of the lease agreement which prohibited the lessee from charging a fee for launching boats at the ramp, and, accordingly, that plaintiffs herein neither paid a fee nor expected to do so, but this hardly constitutes a defense. Having concluded that a business for profit did exist, the statute eliminating the duty of care no longer applied, and the State and its lessee had the duty to remove the unsafe tree that stood in the park near the ramp."
For the reasons hereinafter stated we feel that the trial court erred in holding that the State as owner ran Anacoco Spillway Park as a commercial enterprise for profit, therefore barring applicability of La. R.S. 9:2791 and La.R.S. 9:2795, supra.
The mere fact that the lease imposed upon the lessee to maintain the property "pursuant to good business practices" or that it allowed him to charge fees to operate concessions is not necessarily determinative of the issue of whether or not immunity is available. In Pratt, et al v. State of Louisiana, 408 So.2d 336, (La.App. 3rd Cir. 1981), this Court addressed the same issue, i.e., what factors render a recreational facility a commercial one? Rather than paraphrase we quote, to-wit:
"Plaintiffs place heavy reliance on the fact that fees are charged for use of the recreational facilities. Regarding this point some reasonable effect must be given to the use in LSA-R.S. 9:2795 of the words `with or without charge.' The critical words are: `an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes ... does not thereby ... (3) Incur liability for any injury to person or property incurred by such person.' (Emphasis added.) Clearly the use of the words `with or without charge' must be construed to mean that charging fees for use of recreational facilities does not in itself render the operation and maintenance of such facilities a commercial venture. Logically there would have been no reason to include these words in the statute unless it was for the purpose of providing that charging fees would not render an operation commercial. The provision becomes significant only when a fee is charged.
In view of these conclusions, what factors render a recreational facility a commercial one? The trial court worked the matter out on the basis of whether the enterprise contemplates the earning of a profit. Section 200 Act 591 of 1970 as noted above specified that the Indian Creek Reservoir and Recreational Area should be a non-profit enterprise. Reference *747 to standard dictionary definitions of the word `commercial' convince us that in the context of the facts of the case before us, profit as a primary objective of the venture would be essential to render it commercial. Thus we conclude that the Indian Creek Reservoir and Recreational Area is not a commercial enterprise within the contemplation of LSA-R.S. 9:2795. Under the circumstances it was the purpose and policy of the Legislature to provide non-liability of defendants for the acts of negligence alleged in plaintiffs' petition."
A close reading of the lease agreement between the State and defendant Jeane, as well as the testimony at trial, reveals that from the onset the State had no intention to profit from the operation of the park. Paragraph 1 reflects this by providing that the consideration for said lease shall be that the lessee (Jeane) maintain and keep open the park and property for the use of the public as a recreational area. The lease further provides in Paragraph 4 that the existing boat ramp shall be excluded from the lease and lessee shall not be permitted to charge fees for its use. Additionally, Paragraph 7 allows for cancellation of the lease by the lessor where it is shown lessee is not keeping, providing, or maintaining the property in the appropriate manner, i.e., failing to provide the general public with a recreational facility.
To further support the noncommercial nature of this park, the State introduced the testimony of F. E. Hernandez, Chairman of the Anacoco Prairie Game and Fish Commission. Mr. Hernandez testified that the Commission (State) does not receive any funds from the administration of the park, nor does the State appropriate any funds for its operation. Mr. Hernandez further testified that the financing of the park's operation, maintenance, and development is accomplished by allowing the lessee to run a concession stand and to charge nominal fees to the public for the park's use.[3] Should the park's revenues exceed the expenditures necessary to maintain it in accordance with the terms of the lease, the lease also provides that the lessee is allowed to retain these excess funds. According to Mr. Hernandez, the Commission has found it necessary to offer such an incentive to park managers because without such an arrangement no one would be willing to accept the position. None of the revenues collected, however, go to the State. In conclusion, we feel the facts clearly show that the State's primary objective in running the Anacoco State Park was to provide a recreational facility for the public and not to realize a profit. As such, the park is not a commercial enterprise of the State, and therefore, La.R.S. 9:2791 and La.R.S. 9:2795 bar recovery against it.[4]Pratt, supra.
Since defendant Jeane failed to appeal or answer the appeal, the judgment insofar as it affects him is final, and the issue of whether or not La.R.S. 9:2791 and La.R.S. 9:2795 would likewise bar recovery against him is not before this Court.
For the above and foregoing reasons the judgment of the trial court is reversed insofar as it cast defendant, State of Louisiana in judgment, and it is hereby Ordered, Adjudged, and Decreed that the suit of plaintiffs, Foster Thomas and Carl Ruffin, against the State of Louisiana is dismissed.
Costs at trial are assessed against defendant James M. Jeane. Costs on appeal are taxed one-half (½) against plaintiff, Foster Thomas, and one-half (½) against plaintiff, Carl Ruffin.
REVERSED IN PART AND RENDERED.
NOTES
[1] Plaintiff Thomas' claim is for personal injuries and property damage to his truck. Plaintiff Ruffin's claim is for personal injuries only.
[2] Defendant James M. Jeane has not appealed or answered the appeal in this matter.
[3] Defendant Jeane would charge fifty cents per person for the use of the park. This entrance fee, however, was not charged to those patrons who entered the park to launch their boats.
[4] As we interpret these statutes they act to bar recovery whether one's claim is based on negligence under La.C.C.Art. 2315 or strict liability under La.C.C.Art. 2317.