463 So.2d 1287 (1985)
Brenda Ann KEELEN
v.
STATE of Louisiana, DEPARTMENT OF CULTURE, RECREATION AND TOURISM.
No. 84-C-1710.
Supreme Court of Louisiana.
February 25, 1985.
*1288 Allain F. Hardin, New Orleans, for applicant-plaintiff.
William J. Guste, Jr., Atty. Gen., A. Kell McInnis, III, Asst. Atty. Gen., La. Dept. of Justice, for respondent-defendant.
MARCUS, Justice.
Brenda Ann Keelen filed suit against the State of Louisiana through the Department of Culture, Recreation and Tourism for the wrongful death of her eight-year-old son, Larry Piker. The child drowned in a swimming pool in Fountainbleu State Park in St. Tammany Parish on July 4, 1979. The park is owned by the State and is maintained and operated by the Office of State Parks, Department of Culture, Recreation and Tourism. The State filed a motion for summary judgment alleging that it was immune from suit by authority of La.R.S. 9:2791 and La.R.S. 9:2795.[1] The trial judge *1289 granted the motion and dismissed Keelen's suit at her cost. The court of appeal affirmed.[2] We granted certiorari to review the correctness of that decision.[3]
The issues presented for our consideration are: (1) whether La.R.S. 9:2791 and 2795 apply to the State and its political subdivisions; and (2) whether the statutes confer immunity from liability for a drowning in a swimming pool at Fountainbleu State Park. Because we hold that the statutes do not confer immunity from liability for a drowning in a swimming pool, we need not decide the question of whether the statutes apply to the State and its political subdivisions.
Our task is to determine the intent of the legislature and the scope of immunity granted by the statutes. In so doing, we are guided by the principle that the most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the legislature to enact it. La.Civ. Code art. 18. Where the words of a law are dubious, their meaning may be sought by examining the context with which the ambiguous words, phrases and sentences may be compared, in order to ascertain their true meaning. La.Civ.Code art. 16. We further note that the statutes in question limit the rights of plaintiffs to bring tort actions; as such, they are in derogation of a common right and must be strictly construed. American Creosote Works v. City of Natchitoches, 182 La. 641, 162 So. 206 (1935); Richard & Gaudet v. Housing Authority, City of Lafayette, 323 So.2d 168 (La.App. 3d Cir.1975), writ denied 326 So.2d 337 (La.1976).
At the outset, we note that La.R.S. 9:2791 and 2795 relate to the same subject matter and should be read in pari materia. Arata v. Louisiana Stadium and Exposition District, 254 La. 579, 225 So.2d 362 (La.1969); Malone v. Cannon, 215 La. 939, 41 So.2d 837 (La.1949); La.Civ.Code art. 17. La.R.S. 9:2791 refers to the liability of an owner or occupant of property not used primarily for commercial recreational purposes, while La.R.S. 9:2795 deals with the liability of one owning property used primarily for recreational purposes. Fountainbleu State Park would appear to fall in the latter category. Both statutes contemplate that the limitation of liability will not be granted to commercial recreational facilities which are run for profit. Pratt v. State, 408 So.2d 336 (La.App. 3d Cir.1981), writ denied 412 So.2d 1098 (La.1982); Thomas v. Jeane, 411 So.2d 744 (La.App. 3d Cir.1982). An affidavit submitted in support of the State's motion for summary judgment establishes that Fountainbleu State Park does not earn a profit.
We must now determine whether the statutes create immunity when injury is incurred in a swimming pool in Fountainbleu State Park. Prior to the enactment of La.R.S. 9:2791, landowners were generally exposed to liability for injuries sustained on their property. Liability of landowners was modified in 1964 when La.R.S. 9:2791 was effected in order to encourage the opening of lands for recreational purposes. La.R.S. 9:2795 was subsequently passed in 1975 with similar motives. There is nothing *1290 in either statute to suggest that in enacting these statutes, the legislature intended to extend immunity to owners of all property without limit.
The statement of purpose of La.R.S. 9:2795 is contained in 1975 La.Acts, No. 615, § 1 and provides:
The purpose of the act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.
The use of the language "land and water areas" is suggestive of open and undeveloped expanses of property. Furthermore, the type of recreational activities enumerated in both statutes hunting, fishing, trapping, camping, nature study, etc. can normally be accommodated only on large tracts or areas of natural and undeveloped lands located in thinly-populated rural or semi-rural locales. Specification of these types of activities suggests a policy that would encourage landowners to keep their property in a natural, open and environmentally wholesome state. We would stray from this goal were we to construe the statutes to grant a blanket immunity to landowners without regard to the characteristics of their property. Thus, we conclude that the legislature intended to confer immunity upon owners of undeveloped, nonresidential rural or semi-rural land areas. The size, naturalness and remoteness or insulation from populated areas all attribute to the categorization of property as rural or semi-rural.
The existence of some improvements on relatively undeveloped rural or semi-rural property does not change the character of the land so as to deprive its owner of the immunity granted by the statutes. Improvements such as shelters, toilet facilities, fireplaces, etc. are merely conveniences incidental to the use of the land for enumerated recreational activities and do not of themselves take property out of a rural, undeveloped classification. This view is reinforced by the fact that the definitions of "premises" in La.R.S. 9:2791 and of "land" in La.R.S. 9:2795 include "buildings, structures and machinery."
Examination of the characteristics of the land alone does not end the inquiry into whether the statutes apply to a particular factual situation. The injury-causing condition or instrumentality must also be scrutinized. Again, reference to the types of recreational activities specified in the statutes (hiking, boating, horseback riding, etc.) indicates that the legislature envisioned immunity for landowners who offer their property for recreation that can be pursued in the "true outdoors." When the injury-causing condition or instrumentality is of the type normally encountered in the true outdoors, then the statutes provide immunity. Conversely, when the instrumentality, whether found in an urban or rural locale, is of the type usually found in someone's backyard, then the statutes afford no protection.[4]
Given the analysis stated herein, the question of whether Fountainbleu State Park is non-residential, unimproved rural or semi-rural property must be answered by a review of facts not presently before us. Regardless of the answer, however, it *1291 is clear that a swimming pool is not the type of instrumentality commonly found in the true outdoors. Rather, swimming pools are most often found in residential backyards. We recognize that "swimming" is included in the list of recreational activities in La.R.S. 9:2795; however, the word should be construed by reference to the context in which it is found. La.Civ. Code art. 16. Such consideration leads to the conclusion that the legislature intended to grant immunity for injuries incurred while swimming in lakes, rivers, ponds or other similar bodies of water. Thus, an injury which occurs in a swimming pool is not subject to a defense of immunity under La.R.S. 9:2791 and 2795. It follows that the State cannot assert these statutes in order to avoid liability in the instant case.
Because the trial court did not properly construe the scope of immunity afforded by La.R.S. 9:2791 and 2795, the court of appeal erred in affirming the trial court's grant of summary judgment as a matter of law. La.Code Civ.P. art. 966. Accordingly, we must reverse.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed. The motion for summary judgment is denied. The case is remanded to the trial court for further proceedings in accordance with law and the views expressed herein.
DENNIS, J., concurs with reasons.
NOTES
[1] La.R.S. 9:2791 provides:

Liability of owner or occupant of property not used primarily for commercial recreational purposes
A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant give permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or property, nor does it create any liability where such liability does not now exist. Furthermore the provisions of this Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section.
C. The word "premises" as used in this Section includes lands, roads, waters, water courses, private ways and buildings, structures, machinery or equipment thereon.
La.R.S. 9:2795 provides:
Limitation of liability of landowner of property used primarily for recreational purposes
A. As used in this Section:
(1) "Land" means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.
(2) "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
(3) "Recreational purposes" includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreational purposes, nature study, water skiing, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.
(4) "Charge" means the admission price or fee asked in return for permission to use lands.
(5) "Person" means individuals regardless of age.
B. Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(1) Extend any assurance that the premises are safe for any purposes.
(2) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(3) Incur liability for any injury to person or property incurred by such person.
C. Unless otherwise agreed in writing, the provisions of Subsection B shall be deemed applicable to the duties and liability of an owner of land leased for recreational purposes to the federal government or any state or political subdivision thereof or private persons.
D. Nothing in this Section shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this Act to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care.
[2] 454 So.2d 147 (La.App. 1st Cir.1984).
[3] 459 So.2d 527 (La.1984).
[4] While our research yields little jurisprudence interpreting recreational use immunity statutes that have been enacted in several states, we take guidance from the courts of New Jersey which have construed a similar statute, N.J.S.A. 2A:42A-2 et seq. Compare Harrison v. Middlesex Water Co., 80 N.J. 391, 403 A.2d 910 (N.J. 1979) (no immunity for drowning in reservoir located on improved tract in highly populated suburban area); Boileau v. DeCecco, 125 N.J.Super. 263, 310 A.2d 497 (N.J.Super.1973), aff'd, 65 N.J. 234, 323 A.2d 449 (1974) (no immunity for drowning in backyard swimming pool located in residential area); Primo v. City of Bridgeton, 162 N.J.Super. 394, 392 A.2d 1252 (N.J.Super. 1978) (no immunity for injury on slide in municipal park); with Labree v. Milville Manufacturing, Inc., 195 N.J.Super. 575, 481 A.2d 286 (N.J.Super.1984) (immunity for injury in lake located in undeveloped, thinly populated rural area); Magro v. Vineland, 148 N.J.Super. 34, 371 A.2d 815 (N.J.Super.1977) (immunity for injury when plaintiff struck bottom of pond located on rural, undeveloped land); Odar v. Chase Manhattan Bank, 138 N.J.Super. 464, 351 A.2d 389 (N.J.Super.1976), certif. denied, 70 N.J. 525, 361 A.2d 540 (1976) (immunity for drowning in a pond located on rural, non-residential land).