477 So.2d 1246 (1985)
Mac H. LaCROIX, Individually and as Administrator of the Estate of Sandra Eileen LaCroix, Plaintiff-Appellee,
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION, Defendant-Appellant.
No. 84-728.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1985.
Writ Denied December 2, 1985.
R. Randall Roach and Jerry Finley, Baton Rouge, for defendant-appellant.
James D. Davis, Alexandria, for plaintiff appellee.
Before GUIDRY, LABORDE and KING, JJ.
GUIDRY, Judge.
This litigation stems from a diving accident which occurred on July 8, 1979, in a creek in Grant Parish referred to as the "Three-Tunnel Swimming Hole". Sandra Eileen LaCroix was seriously injured when she dove from the inside of a culvert into a creek which crossed Louisiana Highway 8 and struck her head either against some object in the water or the bottom of the creek. Plaintiff, Mac H. LaCroix, Sandra's father, brought suit individually and as administrator of Sandra's estate against the State of Louisiana, through the Department of Transportation and Development (DOTD).

FACTS
At the time of the accident, Sandra LaCroix was fourteen years old. Sandra, along with her brother, Charles, then age seventeen, and sister, Deborah, then age thirteen, had begun swimming in this spot *1247 only minutes before the accident. Sandra's mother, Melba LaCroix, remained on the bank with her youngest child, Darrel, while the other children swam. The structure from which Sandra dove off can best be described as a concrete culvert divided into three sections. Sandra dove from the inside of the center section of the culvert into a murky pool of water approximately four feet deep. According to Miss LaCroix's testimony at trial, she did a shallow dive into the water and struck her head against something rendering her semiconscious. She was unsure as to what she struck. Her older brother, Charles, testified that after retreiving Sandra from the water, he went back near the culvert to discern what she had struck. He stated that he thought Sandra struck a concrete object projecting out of the sand near the culvert.
The evidence adduced at trial further established that Sandra LaCroix was 5' 4" tall and weighed approximately 225 pounds at the time of the accident. She was a good swimmer and had been taught how to dive by her mother.
Miss LaCroix's neck was broken as a result of this accident. For approximately four months after the accident, she was a quadraplegic. She has since made remarkable progress, although by no means has she fully recovered. She is able to walk but must wear a leg brace on her left leg. She has no finger movement in her left hand and suffers from other ailments inherent in this type of injury.
After a bench trial, the trial court awarded plaintiff $577,000.00 in damages, finding that DOTD was at fault. We gather from the trial court's written reasons for judgment that DOTD was found to be at fault and, therefore, liable to plaintiff because DOTD had, at least, constructive notice that the creek, at the site of the "Three-Tunnel Swimming Hole", was frequented by local residents for swimming; the State failed to maintain such area free of debris; and, no warning signs were posted. The trial court did not find Miss LaCroix guilty of either contributory negligence or assumption of the risk. DOTD suspensively appeals the trial court's judgment.
There is no serious dispute as to the facts in the instant case. Therefore, the sole issue on appeal concerns whether, under such facts, DOTD is liable for the injuries suffered by Sandra LaCroix.
At the outset, we observe that the record is devoid of any evidence establishing the basis for a duty of care owed by the DOTD to the plaintiff. The record does not reflect that the State of Louisiana or the State, through the Department of Transportation and Development, is owner of the area known as the "Three-Tunnel Swimming Hole". Further, there is no evidence in the record reflecting that the DOTD owns a right of way for highway purposes over this area. Presumably, since the DOTD constructed a three culvert bridge traversing the creek which crosses Louisiana Highway 8, it must enjoy a right of way for highway purposes, at least over the area occupied by Highway 8. However, the extent of its right of way in this area is not established in the record. Be this as it may, assuming arguendo that the State of Louisiana and/or the State of Louisiana, through the Department of Transportation and Development, owns the premises or enjoys a right of way thereon, we conclude, for the reasons hereinafter set forth, that the trial court manifestly erred when it rendered judgment against the DOTD for the damages sustained by plaintiff.
La.R.S. 9:2791 and 2795 provide as follows:
§ 2791. Liability of owner or occupant of property not used primarily for commercial recreational purposes
"A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant give permission to another to enter the premises *1248 for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or property, nor does it create any liability where such liability does not now exist. Furthermore the provisions of this Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section.
C. The word "premises" as used in this Section includes lands, roads, waters, water courses, private ways and buildings, structures, machinery or equipment thereon."
§ 2795. Limitation of liability of landowner of property used primarily for recreational purposes
"A. As used in this Section:
(1) "Land" means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.
(2) "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
(3) "Recreational purposes" includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.
(4) "Charge" means the admission price or fee asked in return for permission to use lands.
(5) "Person" means individuals regardless of age.
B. Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(1) Extend any assurance that the premises are safe for any purposes.
(2) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(3) Incur liability for any injury to person or property incurred by such person.
C. Unless otherwise agreed in writing, the provisions of Subsection B shall be deemed applicable to the duties and liability of an owner of land leased for recreational purposes to the federal government or any state or political subdivision thereof or private persons.
D. Nothing in this Section shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this Act to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care."
Recently in Keelen v. State, 463 So.2d 1287 (La.1985), our Supreme Court was called upon to interpret the provisions of La.R.S. 9:2791 and 2795. The court stated:
"...
At the outset, we note that La.R.S. 9:2791 and 2795 relate to the same subject matter and should be read in pari materia. Arata v. Louisiana Stadium and Exposition District, 254 La. 579, 225 So.2d 362 (La.1969); Malone v. Cannon, 215 La. 939, 41 So.2d 837 (La.1949); La.Civ.Code art. 17. La.R.S. 9:2791 refers to the liability of an owner or occupant of property not used primarily for commercial recreational purposes, while La.R.S. 9:2795 deals with the liability of *1249 one owning property used primarily for recreational purposes.
. . . . .
Both statutes contemplate that the limitation of liability will not be granted to commercial recreational facilities which are run for profit. Pratt v. State, 408 So.2d 336 (La.App.3d Cir.1981), writ denied 412 So.2d 1098 (La.1982); Thomas v. Jeane, 411 So.2d 744 (La.App. 3d Cir.1982).
. . . . .
Examination of the characteristics of the land alone does not end the inquiry into whether the statutes apply to a particular factual situation. The injury causing condition or instrumentality must also be scrutinized. Again, reference to the types of recreational activities specified in the statutes (hiking, boating, horseback riding, etc.) indicates that the legislature envisioned immunity for landowners who offer their property for recreation that can be pursued in the "true outdoors." When the injury-causing condition or instrumentality is of the type normally encountered in the true outdoors, then the statutes provide immunity. Conversely, when the instrumentality, whether found in an urban or rural locale, is of the type usually found in someone's backyard, then the statutes afford no protection.
. . . . .
Prior to the enactment of La.R.S. 9:2791, landowners were generally exposed to liability for injuries sustained on their property. Liability of landowners was modified in 1964 when La.R.S. 9:2791 was effected in order to encourage the opening of lands for recreational purposes. La.R.S. 9:2795 was subsequently passed in 1975 with similar motives. There is nothing in either statute to suggest that in enacting these statutes, the legislature intended to extend immunity to owners of all property without limit.
The statement of purpose of La.R.S. 9:2795 is contained in 1975 La.Acts, No. 615, § 1 and provides:
The purpose of the act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.
The use of the language "land and water areas" is suggestive of open and undeveloped expanses of property. Furthermore, the type of recreational activities enumerated in both statutes  hunting, fishing, trapping, camping, nature study, etc.  can normally be accommodated only on large tracts or areas of natural and undeveloped lands located in thinly populated rural or semi-rural locales. Specification of these types of activities suggests a policy that would encourage landowners to keep their property in a natural, open and environmentally wholesome state. We would stray from this goal were we to construe the statutes to grant a blanket immunity to landowners without regard to the characteristics of their property. Thus, we conclude that the legislature intended to confer immunity upon owners of undeveloped, nonresidential rural or semi-rural land areas. The size, naturalness and remoteness or insulation from populated areas all attribute to the categorization of property as rural or semi-rural."
The trial court, in its written reasons for judgment, noted that the site of injury was a popular swimming hole in Grant Parish. The evidence presented at trial substantiates this finding. It was also established at trial that there are no public swimming pools in Grant Parish which no doubt makes creeks such as the one in this case quite popular.
In the Keelen case, the plaintiff filed suit for the wrongful death of her eight year old son as a result of his drowning in a swimming pool in Fountainbleu State Park in St. Tammany Parish. The Louisiana Supreme Court, after commenting upon the intent of the legislature in enacting these *1250 immunity statutes, concluded that an injury occurring in a swimming pool was not subject to a defense of immunity under La.R.S. 9:2791 and 2795. The court found that the "legislature intended to grant immunity for injuries incurred while swimming in lakes, rivers, ponds or similar bodies of water".
The rationale employed by our Supreme Court in Keelen, supra, leads us to conclude that the injury in question took place at a location which is covered by the immunity statutes. Clearly, this accident took place in a rural setting. Because of this site's popularity, we believe it warrants being termed a recreational area. Members of the general public swam in this creek without charge. Admittedly, the State did not invite individuals to swim at this site and considered individuals who did as trespassers. However, in our view, this fact does not preclude the State from enjoying the benefit of the immunity provided by La.R.S. 9:2791 and 2795. Irrespective of whether or not the general public was invited to swim at this location, the fact remains that they were able to enjoy the use of this property as a recreational area. Additionally, the injury-causing condition in this case is of the type one would encounter in the "true outdoors". This was not a swimming pool in someone's back yard. It was simply a small creek used by members of the general public to swim in. Thus, in light of the Keelen case, we find the property on which the injury took place and the activity pursued therein to be covered by the immunity statutes. Moreover, we find that these immunity statutes are applicable to the State and its political subdivisions. See Pratt v. State, 408 So.2d 336 (La.App. 3rd Cir.1981), writ denied, 412 So.2d 1098 (La.1982).
We next turn to the question of whether DOTD willfully or maliciously violated a duty owed to plaintiff so as to exclude it from the immunity granted by the statutes referred to.
La.R.S. 9:2791 provides in pertinent part:
"B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or property ..."
La.R.S. 9:2795 states in part:
"B. Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(1) Extend any assurance that the premises are safe for any purposes.
(2) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(3) Incur liability for any injury to person or property incurred by such person."
In Rushing v. State, 381 So.2d 1250 (La. App. 1st Cir.1980), the First Circuit made the following comments regarding the definitions accorded "willful" and "malicious" in connection with La.R.S. 9:2791. The court stated:
"Willful", as defined by Black's Law Dictionary, Revised Fourth Edition, in pertinent part is as follows:
"Proceeding from a conscious motion of the will; voluntary.
"Intending the result which actually comes to pass; designed; intentional; not accidental or involuntary.
"Conscious; knowing; done with stubborn purpose, but not with malice.
"Premeditated; malicious; done with evil intent, or with a bad motive or purpose, or with indifference to the natural consequences; unlawful; without legal justification." (Citations omitted).
One Supreme Court case addressing the meaning of willful states that there should be an inquiry into the existence of some premeditation and malice coupled with a reasonable expectation of bringing about a real injury to himself or another. Velotta v. Liberty Mutual Insurance Company, 241 La. 814, 132 So.2d 51 (1961).

*1251 Another Supreme Court case approvingly quotes the following from Corpus Juris, to wit: `... (W)illfulness cannot exist without purpose or design, and a willful injury will not be inferred when the result may be reasonably attributed to negligence or inattention.' State v. Vinzant, 200 La. 301, 7 So.2d 917 (1942).
Throughout these definitions runs the concept of conscious design....
Malicious injury as defined by Black's Law Dictionary, Revised Fourth Edition, is an injury committed against a person at the prompting of malice or hatred toward him, or done spitefully or wantonly.
Again the concept of some conscious design arises...."
The trial court, in its written reasons for judgment, found DOTD at fault for, among other reasons, their failure to warn of the dangerous condition. We do not find their failure to warn to be malicious or willful. Further, there was no showing made that DOTD deliberately, willfully or maliciously caused Miss LaCroix's injury.
Although we base our decision on La. R.S. 9:2791 and 2795, our careful review of this record prompts serious doubt as to the correctness of the trial court's finding that DOTD was at fault. We likewise seriously question the finding by the trial court of no fault on the part of Sandra LaCroix. In the latter connection, we observe that a view of photographs of the site introduced at trial depict a rather precarious scene which leads us to conclude that the conduct of Miss LaCroix, i.e., diving into a murky, shallow pool of water, falls short of that expected of a reasonable person. See Sonnier v. Dupin, 416 So.2d 1371 (La.App. 3rd Cir.1982), writ denied, 420 So.2d 984 (La. 1982). Although unnecessary to our decision in this case, in our view, Miss LaCroix was, at the very least, guilty of contributory negligence.
For the above and foregoing reasons, the judgment of the trial court is reversed and set aside, and it is now ordered, adjudged and decreed that there be judgment in favor of defendant, DOTD, and against plaintiff, Mac H. LaCroix, individually and as administrator of the estate of Sandra Eileen LaCroix, dismissing plaintiff's suit with prejudice. All costs of these proceedings at the trial level and on appeal are assessed to plaintiff.
REVERSED AND RENDERED.
KING, J., concurs and assigns written reasons.
KING, Judge, concurring.
I concur in the result reached in the majority opinion.
In my opinion the State of Louisiana, through the Department of Transportation and Development, was not negligent in any way and the sole proximate cause of the accident was the negligence of Ms. LaCroix.
I further agree that LSA-R.S. 9:2791 and La.R.S. 9:2795 are applicable to the State who were the owners of the culvert and bridge where the accident occurred. See Pratt v. State, 408 So.2d 336 (La.App. 3rd Cir.1981), writ den., 412 So.2d 1098 (La. 1982). However, if the State did not own or have a servitude or right-of-way, lease, or occupy the creek and creek bed where the accident occurred these statutes would not be applicable nor would there be any basis for liability of the State under the facts of this case. While the majority applies these statutes to this case, under the rationale employed by the Louisiana Supreme Court in Keelen v. State, 463 So.2d 1287 (La.1985), I do not agree with the interpretation of the application of these statutes by the Supreme Court in the Keelen case. The Supreme Court has, in my opinion, unduly restricted and limited the intent and purpose of these statutes and has arbitrarily differentiated in the application of these statutes, based on the characteristics and use of the property, to only that property which is situated in the "true outdoors" and being used primarily for recreational purposes. See dissenting and concurring opinions in Fusilier v. Northbrook Excess & Surplus, Inc., 471 So.2d *1252 761 (La.App. 3rd Cir.1985). If these statutes were applied, as in my opinion the legislative history of these statutes indicate they should be, to confer immunity upon owners of all property used for recreational purposes from those who are injured while using such property the courts would not have to engage, as did the Supreme Court in Keelen and the majority in this case, in determining whether or not the property was developed or undeveloped, rural or non-rural, semi-rural or urban, residential or non-residential, or being occasionally or primarily used for recreational purposes before finding these statutes are applicable.