488 So.2d 465 (1986)
Margaret Marie BROOKS, Individually, et al., Plaintiffs-Appellants,
v.
CITY OF LAKE CHARLES, et al., Defendants-Appellees.
No. 85-370.
Court of Appeal of Louisiana, Third Circuit.
May 14, 1986.
Mark A. Delphin and Norman L. Williams, Lake Charles, for plaintiffs-appellants.
Stockwell & Assoc., Fred H. Sievert, Lake Charles, Voorhies & Labbe, Mark Bienvenu, Lafayette, Plauche, Smith & Nieset, A. Lane Plauche, Lake Charles, for defendants-appellees.
Before FORET, KNOLL and MOUSER,[*] JJ.
KNOLL, Judge.
Margaret Marie Brooks, individually, as administratrix of the estate of Larry Lawrence Brooks, and as natural tutrix of the minor child, Marquisha Lynette Brooks, together with Rose Ann Winbush, as natural tutrix of the minor child, Brittaney Renee Winbush (plaintiffs) appeal a summary judgment granted in favor of the City of Lake Charles and its insurer, National Union Fire Insurance Company of Pittsburg, Pennsylvania (defendants), dismissing plaintiffs' suit by invoking the City's statutory immunity under LSA-R.S. 9:2795 for the accidental drowning of Mr. Brooks when he fell off the dock at the Lake Charles Civic Center. The sole issue is whether the trial court manifestly erred in its interpretation and application of R.S. 9:2795. We reverse, finding the City is not exempt from liability under these circumstances; therefore, defendants are not entitled to judgment as a matter of law.
The facts are undisputed. On August 27, 1983, at approximately 8:50 p.m., Mr. Brooks was standing on a concrete dock at the Lake Charles Civic Center which abuts Lake Charles, a natural body of water. *466 The concrete dock was located 25 to 30 feet south of the north steps of the Civic Center. Mr. Brooks stepped, slipped or fell from the dock into the lake, resulting in his death by drowning.
The City owns, operates, maintains, and has control of the land on which the Civic Center is located, including the dock from which Mr. Brooks fell. The Civic Center is not a commercial facility, but is open to the public for civic functions as well as recreational activities.
Plaintiffs brought this action seeking damages for the wrongful death of Mr. Brooks, urging strict liability of the City, or in the alternative, negligence of the City and the City's last clear chance to avoid this accident. Defendants answered with a general denial and, in the alternative, urged contributory negligence of Mr. Brooks. Defendants subsequently filed a motion for summary judgment urging the applicability of statutory immunity under R.S. 9:2795. The trial court granted defendants' motion and dismissed plaintiffs' suit.
It is well settled that a motion for summary judgment should be granted if, and only if, the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966; Chaisson v. Domingue, 372 So.2d 1225 (La.1979); Employers' Surplus Line Ins. Co. v. City of Baton Rouge, 362 So.2d 561 (La.1978); Morgan v. Matlack, Inc., 342 So.2d 167 (La.1977). Any doubt is resolved against the granting of summary judgment and in favor of trial on the merits. Employers' Surplus Line Ins. Co. v. City of Baton Rouge, supra; Morgan v. Matlack, Inc., supra.
The determinative issue is whether the City and its insurer are entitled to judgment as a matter of law. At issue is the trial court's interpretation of R.S. 9:2795 and our Supreme Court's decision in Keelen v. State, Dept. of Culture, Recreation, 463 So.2d 1287 (La.1985). R.S. 9:2795 provides:
"A. As used in this Section:
(1) `Land' means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.
(2) `Owner' means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
(3) `Recreational purposes' includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.
(4) `Charge' means the admission price or fee asked in return for permission to use lands.
(5) `Person' means individuals regardless of age.
B. Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(1) Extend any assurance that the premises are safe for any purposes.
(2) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(3) Incur liability for any injury to person or property incurred by such person.
C. Unless otherwise agreed in writing, the provisions of Subsection B shall be deemed applicable to the duties and liability of an owner of land leased for recreational purposes to the federal government or any state or political subdivision thereof or private persons.

*467 D. Nothing in this Section shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this Act to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care."

In Keelen, supra, the Court stated:

"The use of the language `land and water areas' is suggestive of open and undeveloped expanses of property. Furthermore, the type of recreational activities enumerated in both statutes hunting, fishing, trapping, camping, nature study, etc.can normally be accommodated only on large tracts or areas of natural and undeveloped lands located in thinly-populated rural or semi-rural locales. Specification of these types of activities suggests a policy that would encourage landowners to keep their property in a natural, open and environmentally wholesome state. We would stray from this goal were we to construe the statutes to grant a blanket immunity to landowners without regard to the characteristics of their property. Thus, we conclude that the legislature intended to confer immunity upon owners of undeveloped, nonresidential rural or semi-rural land areas. The size, naturalness and remoteness or insulation from populated areas all attribute to the categorization of property as rural or semi-rural.

* * * * * *

Examination of the characteristics of the land alone does not end the inquiry into whether the statutes apply to a particular factual situation. The injury-causing condition or instrumentality must also be scrutinized. Again, reference to the types of recreational activities specified in the statutes (hiking, boating, horseback riding, etc.) indicates that the legislature envisioned immunity for landowners who offer their property for recreation that can be pursued in the `true outdoors.' When the injury-causing condition or instrumentality is of the type normally encountered in the true outdoors, then the statutes provide immunity. Conversely, when the instrumentality, whether found in an urban or rural locale, is of the type usually found in someone's backyard, then the statutes afford no protection." (Emphasis added.)

The Supreme Court recently reaffirmed its position in Landry v. Board of Levee Com'rs of Orleans, 477 So.2d 672 (La. 1985).
In the case before us, plaintiffs contend that the immunity statute is inapplicable because the concrete dock behind the Lake Charles Civic Center is a man-made facility and is not the type of instrumentality likely to be found in the true outdoors. Defendants contend that Mr. Brooks drowned in the lake and that the lake constitutes the true outdoors; therefore, they distinguish the instant case from Keelen because the drowning occurred in a natural body of water, a lake, as opposed to a swimming pool.
After analyzing the facts of the case sub judice in light of Keelen and Landry, we find R.S. 9:2795 inapplicable because an accident occurring at the Civic Center within the corporate limits of Lake Charles does not constitute the true outdoors as contemplated by the statute. Although the lake is a natural body of water, the injury-causing condition was part of the civic center complex and as such, in our view, it cannot be categorized as the true outdoors; therefore, it does not come within the purview of the statute, which the legislature intended to apply to owners of undeveloped, nonresidential rural or semi-rural land areas. In accord, see Fusilier v. Northbrook Excess & Surplus Ins., 471 So.2d 761 (La.App. 3rd Cir.1985), writ denied, 472 So.2d 918 (La. 1985). Accordingly, under the circumstances of this case, we conclude that the City does not have the benefit of landowner immunity or limitation of liability accorded by R.S. 9:2795.
*468 For the foregoing reasons, the summary judgment appealed from is reversed and set aside, and the case is remanded to the trial court for further proceedings in accordance with law and the views expressed herein. Costs of this appeal are assessed to the City of Lake Charles, insofar as permitted by LSA-R.S. 13:4521, and its insurer, National Union Fire Insurance Company of Pittsburg, Pennsylvania.
REVERSED AND REMANDED.
NOTES
[*] Judge Edward M. Mouser of the Thirty-Third Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.