525 So.2d 1211 (1988)
Johnny Bailey ADAMS
v.
HARTFORD ACCIDENT & INDEMNITY COMPANY.
No. CA 870478.
Court of Appeal of Louisiana, First Circuit.
May 17, 1988.
*1212 Jewel E. Welch, Jr., Baker, for plaintiff-appellee.
John W. Perry, Jr., Mathews, Atkinson, Guglielmo, Marks & Day, Baton Rouge, for defendant-appellant Hartford Acc. & Indem. Ins. Co.
Before COVINGTON, C.J., and SAVOIE and LeBLANC, JJ.
SAVOIE, Judge.
This is a tort action brought by plaintiff against the insurer of a parish park for an injury sustained in the park.
On June 1, 1985, plaintiff was playing in a softball game at Slaughter Park in Slaughter, Louisiana. The park is owned by the Parish of East Feliciana and operated by the Slaughter Park Commission. The Commission is staffed by volunteers and all maintenance on the park grounds is done by volunteers. The Police Jury of East Feliciana, which includes the Slaughter Park Commission, was insured by Hartford *1213 Accident & Indemnity Company under a general liability insurance policy. The fence surrounding the softball field is a standard chain link fence installed with the prongs or barbs on the top. Such chain link fences can be installed with the open barbs either at the top or at the bottom of the fence. The fence was installed by volunteers in 1981 or early 1982. This particular field had been used exclusively as a softball field for two years prior to the plaintiff's injury.
On the day of the injury plaintiff was playing softball in the left outfield when a fly ball was hit, requiring plaintiff to retreat backwards watching the ball. As he was running backwards he hit the fence with his back, requiring that he reach back with his right hand to grab the fence and steady himself. In reaching back plaintiff jabbed a fence prong into the thenar eminence of the right palm, sustaining a one centimeter laceration. Plaintiff was taken to a hospital emergency room and received six stitches. Plaintiff has had a normal range of motion of the thumb since the stitches were removed less than two weeks following the injury.
Plaintiff filed suit against defendant on October 18, 1985. A motion for summary judgment was filed on behalf of defendant, was heard and denied on September 9, 1986. Trial on the merits was held on September 24, 1986. The trial court rendered judgment, without assigning reasons, in open court on December 11, 1986. Judgment was rendered in favor of plaintiff and plaintiff was awarded $6,000.00 in general damages, $477.12 in lost wages and $180.47 for medical expenses. A formal judgment was signed on January 13, 1987, from which a suspensive appeal was taken on behalf of defendant.
Defendant alleges three assignments of error:
1. The trial court was manifestly wrong in concluding that the chain link fence was defective and posed an unreasonable risk of injury to plaintiff.
2. The trial court abused its discretion in awarding plaintiff $6,000.00 in general damages.
3. The trial court erred in denying the motion for summary judgment based on LSA-R.S. 9:2795 in finding that the park was not property used for recreational purposes as contemplated under LSA-R. S. 9:2795.

APPLICABILITY OF LSA-R.S. 9:2795
Defendant filed a motion for summary judgment alleging that Slaughter Park was immune from suit by authority of LSA-R.S. 9:2795.[1] The trial court denied *1214 the motion and found that the park was not property used for recreational purposes as contemplated under LSA-R.S. 9:2795. The trial court was correct in finding that the park was not immune from liability.
The Louisiana Supreme Court set forth a test to be used in determining the applicability of LSA-R.S. 9:2795 in Keelen v. State of Louisiana, Department of Culture, Recreation and Tourism, 463 So.2d 1287 (La.1985). The court held that the legislature intended to confer immunity upon owners of undeveloped, non-residential, rural or semi-rural land areas. 463 So.2d at 1290. In addition, the court stated:
The injury-causing condition or instrumentality must also be scrutinized.... When the injury-causing condition or instrumentality is of the type normally encountered in the true outdoors, then the statutes provide immunity. Conversely, when the instrumentality, whether found in an urban or rural locale, is of the type usually found in someone's backyard, then the statutes afford no protection. (Footnote omitted.) 463 So.2d at 1290.
Under the Keelen test, the chain link fence is not normally encountered in the "true outdoors" and can be usually found in residential backyards. Therefore, LSA-R.S. 9:2795 does not provide immunity from liability in the instant case. This assignment of error is without merit.

APPLICABILITY OF LSA-C.C. art. 2317
Defendant alleges that the trial court was manifestly wrong in concluding that the chain link fence was defective and posed an unreasonable risk of injury to plaintiff. We were not favored by the trial court with reasons for judgment. The trial court found liability on the part of the defendant which we assume was based on LSA-C.C. art. 2317. For recovery under LSA-C.C. art. 2317, a plaintiff must show: (1) that the thing which caused the injury was in the care or custody of the defendant owner; (2) that a vice or defect existed in the thing; and (3) that the vice or defect caused the injury. Varnado v. Sanders, 477 So.2d 1205, 1214 (La.App. 1st Cir.1985), writ denied, 481 So.2d 630 (La.1986).
(1) The fence which caused the injury is in the Slaughter Park which is operated and maintained by the Slaughter Park Commission. The installation and maintenance of the fence was done by volunteers pursuant to the direction of the Slaughter Park Commission. The fence was in the care and/or custody of the defendants insured.
(2) We must next determine whether the thing which caused the harm was defective. A defect is some flaw or fault existing or inherent in the thing itself that creates an unreasonable risk of harm to others. Varnado, 477 So.2d at 1215. Not every defect can serve as a basis for a claim. The defect must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Koppie v. Commercial Union Ins. Co., 478 So.2d 179, 181 (La.App. 3rd Cir.), writ denied, 479 So.2d 922 (La.1985). In the instant case, the fence was improperly installed. Ordinarily the open barbs are not at the top because such open barbs present *1215 a danger that someone inadvertently coming in contact therewith might be scratched or cut. There are many instances where such barbs are deliberately exposed on the top as a deterrent to intruders. However, here the only reason for the fence was to limit the extent of the playing area. There was no reason to expose the barbs on the top of such a fence and it was foreseeable that such barbs would present a danger to players; that danger being to cut, scratch or pierce ball players who might run into the fence. Under the particular facts of this case the installation of the fence with the barbs exposed constituted a defect.
(3) Our last inquiry is whether the defect caused the injury. The evidence clearly establishes that the prongs of the chain link fence caused the injury sustained by plaintiff.
We cannot say that the trial court was manifestly wrong in concluding that the chain link fence was defective and posed an unreasonable risk of injury to plaintiff. This assignment of error is without merit.

QUANTUM
The defendant alleges that the trial court abused its discretion in awarding plaintiff $6,000.00 in general damages. An appellate court will not disturb an award of damages made by the trial court unless there is an abuse of its much discretion. LSA-C.C. art. 1999. A trial judge abuses his "much discretion" when he grants an award in excess of or below the amount that reason dictates is necessary to adequately compensate the person for his injury under the facts shown to exist in his case. Reck v. Stevens, 373 So.2d 498 (La. 1979).
As stated by our supreme court in Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976):
We do reemphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence. (Citations omitted.)
We find that the record does not support an award of $6,000.00 in general damages for the injury sustained by plaintiff. The plaintiff sustained a one centimeter laceration, received six stitches, had a normal recovery, experienced no complications whatsoever and had a normal range of motion of the thumb less than two weeks after the injury. An award of $6,000.00 in general damages is in excess of an amount necessary to adequately compensate the plaintiff for his injury.
Therefore, since we have found that the trial court has abused its discretion, we must lower the award to the highest point which is reasonably within the discretion afforded the trial court. Accordingly, we lower the award in general damages to $2,500.00.[2]
*1216 For the above reasons, we will lower the general damage award from $6,000.00 to $2,500.00, which we consider to be the highest amount reasonably within the discretion afforded the trier of fact.
The judgment of the trial court is amended to decrease the general damage award to plaintiff to the sum of $2,500.00. In all other respects, the judgment of the trial court is affirmed. All costs on appeal are to be paid by plaintiff.
AMENDED AND AFFIRMED.
COVINGTON, C.J., concurs and assigns reasons.
COVINGTON, Chief Judge, concurring:
I concur in the result, because of the negligence of the defendant in allowing the open barbs of the chain link fence to remain unaltered and unprotected after the enclosed area became used as a softball field. It is undisputed that the fence was erected by volunteers in 1981 or early 1982. The enclosed area was not used as a softball field until sometime in 1983. Thus, there can be no negligence attributed to the defendant at the time the fence was erected. However, once the enclosed area became used as the softball field, the open barbs did present a risk of harm to those playing in the field, such as the plaintiff, which the defendant had a duty to protect against. There is no dispute as to the defendant's knowledge that the area was being used as a softball field after 1983.
However, I disagree with that portion of the majority's opinion which finds the installation of this typical chain link fence to be defective, being of the opinion that such a fence in normal use poses no unreasonable risk of harm. Liability in this instance is more properly predicated on negligence under a duty/risk analysis than the strict liability of the custodian of a defective thing under LSA-C.C. Article 2317.
NOTES
[1] LSA-R.S. 9:2795 provides:

Limitation of liability of landowner of property used for recreational purposes; property owned by the Department of Wildlife and Fisheries
A. As used in this Section:
(1) `Land' means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.
(2) `Owner' means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
(3) `Recreational purposes' includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.
(4) `Charge' means the admission price or fee asked in return for permission to use lands.
(5) `Person' means individuals regardless of age.
B. (1) Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(a) Extend any assurance that the premises are safe for any purposes.
(b) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(c) Incur liability for any injury to person or property incurred by such person.
(2) The provisions of this Subsection shall apply to owners of commercial recreational developments or facilities for injury to persons or property arising out of the commercial recreational activity permitted at the recreational development or facility that occurs on land which does not comprise the commercial recreational development or facility and over which the owner has no control when the recreational activity commences, occurs, or terminates on the commercial recreational development or facility.
C. Unless otherwise agreed in writing, the provisions of Subsection B shall be deemed applicable to the duties and liability of an owner of land leased for recreational purposes to the federal government or any state or political subdivision thereof or private persons.
D. Nothing in this Section shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this Section to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care.
E. The limitation of liability provided in this Section shall apply to any lands or waterbottoms owned, leased, or managed by the Department of Wildlife and Fisheries, regardless of the purposes for which the land or waterbottoms are used, and whether they are used for recreational or nonrecreational purposes.
[2] Guillory v. Keel, 502 So.2d 1159 (La.App. 3rd Cir.), writ denied, 505 So.2d 1144 (La.1987) (plaintiff sustained a laceration to the lower lip and received emergency room treatment and minor surgery was later required, general damages of $2,000.00); Rose v. Winn-Dixie La., Inc., 474 So.2d 26 (La.App. 4th Cir.1985) (plaintiff sustained lacerations under the knee which left two scars, both about two centimeters in length, general damages of $3,500.00); Bosio v. Nat'l Tea Co., 485 So.2d 536 (La.App. 5th Cir.1986) (plaintiff's hand was caught in a conveyor belt and plaintiff did not have full use of hand for eight or nine months, general damages of $3,500.00); Blue v. State Farm Mut. Auto Ins. Co., 493 So.2d 701 (La.App. 2nd Cir.), writ denied, 496 So.2d 1041 (La.1986) (plaintiff was attacked with a ballpoint pen and sustained several cuts and scratches, no serious injury or disfigurement, general damages of $1,000.00); Bennett v. Tusa, 447 So.2d 72 (La.App. 4th Cir. 1984) (plaintiff sustained a four centimeter laceration on his forearm and received stitches, minor surgery and a six day hospital stay were later required because of infection, no permanent disability, general damages of $2,000.00).