408 So.2d 336 (1981)
Gladney PRATT, et al., Plaintiffs-Appellants,
v.
STATE of Louisiana, Defendants-Appellees.
No. 8506.
Court of Appeal of Louisiana, Third Circuit.
December 16, 1981.
Rehearing Denied January 29, 1982.
Writ Denied March 19, 1982.
*337 Eugene P. Cicardo, Gravel, Robertson & Brady, James J. Brady, Alexandria, for plaintiffs-appellants.
David C. Kimmel and Janice M. Hornot, La. Dept. of Justice, Baton Rouge, Gist, Methvin, Hughes & Munsterman, David Hughes, Alexandria, for defendants-appellees.
Before CULPEPPER, CUTRER and STOKER, JJ.
STOKER, Judge.
This is one of two cases which were consolidated for trial. We render a separate opinion in the companion case on this date.[1]
Both cases are wrongful death and survival actions growing out of the drownings of Mark S. Pratt and Darrell Ray Burgess at Indian Creek Reservoir and Recreation area.
In both cases the trial court granted motions for summary judgment based on a state statute purporting to exempt or grant immunity from liability to owners of land used for recreational facilities. The statute is LSA-R.S. 9:2795. The statute does not apply to "an owner of commercial recreational developments or facilities." One of the principal issues is whether the recreational area at which the drownings occurred was a commercial development or facility. The trial court held it was not so that the defendants were exempt from liability from negligence.
Plaintiffs in both cases base their cases on alleged acts of negligence of a state *338 agency and the Rapides Parish Police Jury. The Indian Creek Reservoir and Recreational Area contains an artificial lake with adjacent recreational areas. The lake and facilities are located on land owned by the State through the Department of Natural Resources, Office of Forestry. That agency and the Rapides Parish Police operate and maintain the facility under a contract entered into by the two public bodies. The statute on which the summary judgments were granted, LSA-R.S. 9:2795, provides as follows:
"A. As used in this Section:
(1) `Land' means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.
(2) `Owner' means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
(3) `Recreational purposes' includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.
(4) `Charge' means the admission price or fee asked in return for permission to use lands.
(5) `Person' means individuals regardless of age.
B. Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(1) Extend any assurance that the premises are safe for any purposes.
(2) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(3) Incur liability for any injury to person or property incurred by such person.
C. Unless otherwise agreed in writing, the provisions of Subsection B shall be deemed applicable to the duties and liability of an owner of land leased for recreational purposes to the federal government or any state or political subdivision thereof or private persons.
D. Nothing in this Section shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this Act to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care."
The trial court gave extensive well written reasons for judgment. We take the liberty of quoting portions of those reasons which we adopt as our own and to which we will add further comment. The trial court's reasons for judgment state:
"* * * The legal responsibility of the defendants in these suits is predicated upon negligence. While the specific allegations of negligence vary somewhat in each suit, generally plaintiffs aver that defendants were negligent in failing to provide lifeguards, adequate warnings, proper rescue equipment, properly trained rescue personnel, and further aver that defendants were negligent in maintaining and operating the swimming area which they knew, or should have known was unsafe for such purposes.
"The defendants, Rapides Parish Police Jury (hereinafter sometimes referred to as `Police Jury') and the State of Louisiana, through the Department of Natural Resources, Office of Forestry (hereinafter sometimes referred to as `the State'), have filed Motions for Summary Judgment in each of the suits. The defendant Police Jury contends that the Indian Creek Reservoir and Recreation Area was under the exclusive operation, maintenance and control of the State of Louisiana and as such, the Police Jury did not have any right, duty or obligation to maintain, and operate the recreation and swimming area. The Police *339 Jury contends in the alternative, that it is exempted from liability for damages which occurred under the circumstances involved in this matter by [LSA-R.S.] 9:2795. The State of Louisiana contends that it also is exempt from liability under the same statute.
"The two issues presented for decision on these motions are:
1) Whether a genuine issue of material fact exists as to the control over the Indian Creek Reservoir and Recreation Area;
2) Whether the defendants are exempted from liability by [LSA-R.S.] 9:2795.

PART I. CONTROL
"The Police Jury's principal contention presupposes, and in effect admits, that the existence of a duty for which liability may be established, is premised on a finding that the defendant exercised some degree of control over the recreation and swimming area. In support of the motion, defendant relies heavily on a contract and agreement dated April 22, 1974 between the Police Jury and the State of Louisiana, and the deposition of Mr. Lamar Joffrion, District Forester for the Office of Forestry.
"The contract clearly states:
`The Louisiana Forestry Commission shall operate and maintain and manage the Indian Creek Recreational Area and shall have the right and authority to assess and collect fees for the use of the recreational area which funds so collected shall be used exclusively for the maintenance and operation of the Indian Creek Reservoir and Recreational Area.'
"In his deposition, Lamar Joffrion, in response to questioning regarding the state's control over the operation of the recreation area, testified that they `basically, administer it.' (Depo., P.8).
"The general tenor of the contract and deposition is that the day-to-day operation of the recreation area has been left largely to the State.
"However, the contract of April 22, 1974 also recognizes and provides for certain duties to be performed by the Police Jury. The Police Jury is charged with responsibility for the maintenance and operation of the reservoir and spillway, and maintenance of blacktopped roads within the recreation complex. The agreement also provides for the establishment of an advisory committee, `in order to insure the effective operation of the reservoir and recreational area.' That committee is composed of eight (8) members, two of which come from the Police Jury.
"In reference to the committee, Lamar Joffrion testified:
`Basically whenever we do something new out there, we pass it through that committee. Raise fees, raise and lower the water level, you know, and new construction that's going on, any road work that needs to be done, boat dock that needs things below the water line which we can't do, or whenever we need help, we call on them and they do it.'
"Lamar Joffrion also testified to the effect that he was under the impression that the Police Jury had passed ordinances on certain aspects of the recreation area activities. Plaintiffs have not complied with law relative to the introduction into evidence of ordinances and so this Court is unable to take judicial notice of those local laws, if any.
"From the items submitted to support or oppose the motion, it is apparent, that the State, in large measure, controls the operation of the recreation area. It is equally apparent that, to some small degree, the Police Jury also exercises control.
"The degree of control each body exercises is a fact question. At this point, it cannot be said that the issue is resolved. Accordingly, the Motion for Summary Judgment on the basis of lack of control is inappropriate.

PART II. EXEMPTION FROM LIABILITY
"Movers have contended that regardless of the control issue, they are exempted from liability by [LSA-R.S.] 9:2795 which reads in pertinent part:

*340 `B. Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
1) Extend any assurance that the premises are safe for any purposes;
2) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed;
3) Incur liability for any injury to person or property incurred by such person.'
"The statute defines `owner' as the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises. Somewhat inconsistently with its position discussed earlier, the Police Jury urges that it has the status of an `owner' for the purposes of exemption under this alternative basis for summary judgment.
"Both sides have extensively briefed and argued the effect of [LSA-R.S.] 9:2795. Movers contend that LSA-R.S. 9:2795 operates to immunize them from any liability under circumstances such as are present in this case unless there is a finding that they are guilty of a willful or malicious failure to warn against a dangerous condition or that Indian Creek Reservoir and Recreation Area is a commercial recreational development or facility.
"Primary emphasis has been placed by both parties on the interpretation of the phrase, `commercial recreational developments or facilities'. Movers contend that [LSA-R.S.] 9:2795 should be read in pari materia with [LSA-R.S.] 9:2791 which equates a commercial recreational enterprise with an establishment run for profit. Mover argues that the Indian Creek area is not run for profit and therefore is not to be considered a commercial recreational enterprise with an establishment run for profit. Mover argues that the Indian Creek area is not run for profit and therefore is not to be considered a commercial recreational development or facility within the meaning of [LSA-R.S.] 9:2795. Defendants in Motion have argued that the Indian Creek area is run for profit. Alternatively, plaintiffs have argued that it was not the intent of the legislature to create an immunity in a situation such as here present, particularly, in light of the abolition of sovereign immunity contained in Article 12, Section 10 of the Louisiana Constitution of 1974.
"From the wording of the statute, it is clear that the legislature has envisioned some situations where an owner of land would be immune to liability even if he receives some financial remuneration for the use of his property. It is equally clear that there are some situations in which an owner of land may be exposed to liability even if the use of his land is a pure gratuity. Taken in this light, resolution of the question of whether or not profit is made is not necessarily determinative of the issue of whether or not immunity is available.
"Having considered the arguments of counsel, depositions and affidavits filed in the record, this Court finds that within the intendment of the statute, a commercial recreational development or facility is one which is run for profit and further finds that the Indian Creek Reservoir Recreational Area is not run for profit. Accordingly, under the terms of this statute, the defendants are not owners of commercial recreational developments or facilities.
"This does not end the inquiry however. As previously discussed, this finding that the defendants were not owners of a commercial recreational development or facility does not in and of itself mean that they are immune from liability.
"The precise nature and extent of the immunity granted by LSA-R.S. 9:2795 is not clear. This Court has endeavored to employ the canons of statutory construction embodied in Civil Code Articles 13 through 21 and jurisprudence to interpret the statute.
* * *
*341 "In a Louisiana Law Review article[2] which examined the phraseology of [LSA-R.S.] 9:2791 (which is similar in wording to [LSA-R.S.] 9:2795), the author wrote:
`The statute refers broadly to an absence of a `duty of care to keep premises safe from injury.' Presumably, the measure refers only to the physical condition of the land and does not purport to grant any immunity to the landowner with reference to the activities in which he may engage in the presence of trespassers or licensees. But again, the act invites the argument that a carelessly conducted activity is merely one aspect of the maintenance of unsafe premises, and that the legislature intended an immunity here also. If so, the jurisprudence of Louisiana will have received serious setbacks.'
"Defendants have argued persuasively that the broad grant of immunity is precisely what the legislature intended and that this interpretation is clear from a plain reading of the text. From the urging of the parties and the obvious difficulties in interpretation of the statutes, it is clear that an examination of the legislative intent is appropriate. In attempting to discern the legislative intent, this Court has examined, among other things, the title of the act and the existing law which may have prompted enactment of that statute. While not part of the statute, the title of an act may be used to determine legislative intent. State v. Madere, 352 So.2d 666 (La. 1977).
"The title of the act states:
`An act to provide for the limitation of tortious liability to landowners where property is made available to the public for recreational purposes.'
"The statement of the purpose of the act is contained in Section 1. It states:
`That the purpose of the act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.'
"It is clear from the foregoing that the legislature intended to grant an immunity to landowners who allow their property to be used for recreational purposes. The extent of that grant of immunity is not yet clear.
"The jurisprudence is to the effect that the legislature is presumed to have enacted each statute with deliberation and with full knowledge of all existing laws on the same subject. Legros v. Conner, 212 So.2d 177 (La.App., 3rd Cir. 1968).
"Prior to the enactment of [LSA-R.S.] 9:2795, the legislature had enacted [LSA-R.S.] 9:2791 (Acts 1964, No. 248). That statute was virtually identical to the one in question, with the exception of certain language contained in the new statute which would extend the immunity even if a nominal fee is charged for the use of the property. There is an absence of applicable legislation (sic) on [LSA-R.S.] 9:2791. It is clear however, that prior to the enactment of that statute and after its enactment, presumably due to ignorance of its provisions, owners of land were often held liable for injuries which occurred on their property.
"Prior to this statute's enactment, it was generally held that a landowner owed a duty to a licensee to provide safe premises and to warn of defects on his property. Cf., Cothern v. LaRocca, [255 La. 673], 232 So.2d 473 (1970). It is quite possible, as the defendants contend, that the legislature intended to alter the state of the jurisprudence. This contention is supported by the statement of purpose of the act, by the title of the act, and by the relative narrowness of the scope of the act. The grant of immunity is limited to those landowners who allow their property to be used for recreational purposes. The statute specifically provides that a landowner who permits another to use his land for recreational purposes does not constitute (sic) such person the legal status of an invitee or licensee *342 to whom a duty of care is owed. The statute also specifies that the owner is not to incur liability for any injury to person or property incurred.
"Plaintiffs have argued that such a grant of immunity to the state or its political subdivisions would be contrary to the prohibition against sovereign immunity contained in Article 12, Section 10, of the Louisiana Constitution of 1974. This argument is without merit. [LSA-R.S.] 9:2795 is not designed to re-establish immunity on the basis of a sovereign status.
"By its terms, the grant of immunity is made to any landowner who has made his land available for certain recreational purposes. The State, for the purposes of the statute, stands in the same position as would any other private litigant.
"Having considered the text of the statute and its stated purposes in light of the state of the law at the time of the enactment of [LSA-R.S.] 9:2795, this Court finds that the legislature intended to grant an immunity from liability under the circumstances of this case.
"Accordingly, for the foregoing reasons, judgment is rendered herein in favor of defendants granting the Motions for Summary Judgment."
Act 591 of 1970 of the Louisiana Legislature authorized the Louisiana Forestry Commission to manage and maintain the Indian Creek Reservoir and Recreational Area. Section 2 of the Act authorized the commission "to assess and collect fees for use of the Reservoir and Recreational Area," but further provided that "the funds so collected shall be used exclusively for the maintenance and operation of" the facility. A similar provision appears in the contract between the defendants. The attachments to the motions for summary judgment indicate that the various fees charged are nominal.
Plaintiffs place heavy reliance on the fact that fees are charged for use of the recreational facilities. Regarding this point some reasonable effect must be given to the use in LSA-R.S. 9:2795 of the words "with or without charge." The critical words are: "an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes ... does not thereby ... (3) Incur liability for any injury to person or property incurred by such person." (Emphasis added.) Clearly the use of the words "with or without charge" must be construed to mean that charging fees for use of recreational facilities does not in itself render the operation and maintenance of such facilities a commercial venture. Logically there would have been no reason to include these words in the statute unless it was for the purpose of providing that charging fees would not render an operation commercial. The provision becomes significant only when a fee is charged.
In view of these conclusions, what factors render a recreational facility a commercial one? The trial court worked the matter out on the basis of whether the enterprise contemplates the earning of a profit. Section 2, Act 591 of 1970 as noted above specified that the Indian Creek Reservoir and Recreational Area should be a non-profit enterprise. Reference to standard dictionary definitions of the word "commercial" convince us that in the context of the facts of the case before us, profit as a primary objective of the venture would be essential to render it commercial. Thus we conclude that the Indian Creek Reservoir and Recreational Area is not a commercial enterprise within the contemplation of LSA-R.S. 9:2795. Under the circumstances it was the purpose and policy of the Legislature to provide non-liability of defendants for the acts of negligence alleged in plaintiffs' petition.
With reference to the Rapides Parish Police Jury a further point should be emphasized. This agency first contended that it was entitled to be dismissed on motion for summary judgment on the ground that it neither owned nor controlled the reservoir and recreation facilities. The trial court found that it was clear that the Police Jury did exercise control over the facility to *343 some degree. Hence, a motion for summary judgment in favor of the Police Jury on this ground was inappropriate. On the other hand this finding that the Police Jury exercised control to some degree was sufficient to make the Police Jury an "owner" under the statute in question. This was the Police Jury's alternative position.
The definition of "owner" is contained in subparagraph (2) of Paragraph A of LSA-R.S. 2795. It provides as follows:
"`Owner' means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises." (Emphasis supplied.)
Considering this statutory definition we think the trial court was correct in deeming the Police Jury to be an owner within the contemplation of the statute. Therefore, this defendant enjoyed the protection of the statute.
Plaintiffs cannot complain of this interpretation and holding. In the Pratt case plaintiffs alleged in Paragraph 11 of their petition that "[t]he Indian Creek Reservoir and Recreation Area, at the time, was under the exclusive control of the defendants." In the Maxwell case the plaintiff named the defendants in paragraph one of her petition, stating in part: "Made defendants herein are: (a) The Rapides Parish Police Jury ... among whose duties is the supervising and maintaining of the Indian Creek Recreation Area ...".
For the foregoing reasons the judgment of the trial court in this case is affirmed. The costs of this appeal are assessed to plaintiffs-appellants.
AFFIRMED.
NOTES
[1] The companion case is Maxine B. Mitchell v. Rapides Parish Police Jury, et al., 408 So.2d 343 (La.App. 3rd Cir. 1981).
[2] The trial court refers to a review in 25 La. Law Review 47 by Professor Wex Malone and the quotation appears on page 49.