408 So.2d 309 (1981)
Douglas JOLIVETTE, Plaintiff-Appellant,
v.
CITY OF LAFAYETTE, Dallas Courville & Todd Courville, Maryland Casualty Co. & Houston General Insurance Company, Defendants-Appellees.
No. 8572.
Court of Appeal of Louisiana, Third Circuit.
December 16, 1981.
Rehearing Denied January 29, 1982.
*310 Simon & Dauterive, J. Minos Simon, Lafayette, for plaintiff-appellant.
Allen, Gooch & Bourgeois, Kenneth M. Henke and St. Paul Bourgeois, IV, Mouton, Roy, Carmouche, Bivens & Kraft, Harmon F. Roy, Lafayette, for defendants-appellees.
Before CULPEPPER, CUTRER and STOKER, J.
STOKER, Judge.
This suit for damages in tort arose out of a tragic accident which occurred on June 9, 1979. On that day the plaintiff-appellant Douglas Jolivette dove from a high diving board at a public pool owned and operated *311 by the defendant-appellee, the City of Lafayette. The plaintiff struck another swimmer who had jumped before him from the same diving board. As a result of this collision, the plaintiff sustained injuries to his neck which rendered him a paraplegic. Todd Courville, a minor and one of two lifeguards assigned to watch the diving section of the pool at the time of the accident, was joined as a defendant as was his father, Dallas Courville. Also joined as defendants were Maryland Casualty Company and Houston General Insurance Company, liability insurers for the City of Lafayette.
The issue of liability was bifurcated. The question of the liability of Todd Courville was decided by the jury, and the liability of the City of Lafayette and its insurers was decided by the trial court. The jury returned a verdict finding neither Todd Courville nor any other employee of the City of Lafayette guilty of negligence that was a cause-in-fact of the accident. The trial court found that the City of Lafayette was not negligent and therefore was not liable for the plaintiff's injuries.
Plaintiff in this appeal assigns three errors in the trial court's decision:
1. The verdict and judgment of the District Court are contrary to the law and the evidence.
2. The District Court failed to give proper instructions to the jury.
3. The District Court failed to apply the last clear chance doctrine.
These three assignments of error are closely interrelated and will be discussed below.

WAS THE VERDICT AND JUDGMENT CONTRARY TO THE EVIDENCE?
To substantiate his first assignment of error, the plaintiff reviews at length the testimony elicited at trial with special emphasis on the facts he attempted to establish in that proceeding. It should be noted at this point that the evidence at trial supports two versions of facts critical to the plaintiff's recovery. The version supported by the plaintiff's testimony is that he made a normal forward dive and landed three to five feet in front of the diving board. At this point the plaintiff struck the swimmer who had jumped from the board immediately prior to the dive. The defendant's version of the facts, supported by testimony from Pam Domingue (who was the other lifeguard besides Todd Courville assigned to watch the diving area of the pool at the time of the accident), is that the swimmer who was struck by the plaintiff in his dive was swimming to the ladder on the west side of the pool. According to this testimony, the plaintiff had to dive far to the right of the board for the collision between him and the swimmer to occur.
It is well settled that where there is conflicting testimony, a reasonable evaluation of credibility made by the trier of facts should not be disturbed upon appellate review unless manifestly erroneous. Canter v. Koehring Company, 283 So.2d 716 (La. 1973) and Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). In the case before us we find ample evidence to support both the jury verdict and the judgment rendered by the trial court. The trial court in its reasons for judgment notes the conflicting accounts of the accident and finds that "the evidence indicates that Douglas [the plaintiff] dived and landed between 6 to 12 feet to the front and right of the diving board." The trial court stated that the duty of the City was to protect against injury to swimmers and divers in the normal use of the board, but found that the plaintiff's diving far to the right constituted an abnormal use of the board for which the City was not liable. The jury apparently reached similar conclusions in its finding that Todd Courville was not negligent.
The evidence to support the finding that the plaintiff dove outside of the area of the pool which users of the high board normally entered consists mainly of testimony from Pam Domingue. She was the roving lifeguard in the diving area at the time of the accident. The high diving board at the Lafayette pool is flanked by two low boards, but at the time of the accident the low board on the west side of the high board had been removed from its mounts *312 and was not in use. Pam Domingue was sitting on one of these mounts immediately prior to the accident. She testified that she observed a swimmer almost directly in front of her position at that time but that the area in front of the high board was clear. She also testified that she saw plaintiff dive far to the right in front of her position; but, knowing the plaintiff to be an experienced diver, she assumed he was in no danger and turned her attention to another area under her care. Seconds later, she became aware of the collision when she heard Todd Courville blow his whistle and dive from his stand to rescue the plaintiff. Although she did not see the actual collision, she later identified the swimmer she had observed swimming to the right as Dwight Williams. He is the swimmer whom the plaintiff struck. Domingue apparently made the identification by a simple deduction since she had observed only one swimmer in the area of the accident before the collision occurred.
Other evidence was presented at trial to corroborate Domingue's placement of the site of the accident to the far right of the high diving board. Todd Courville said that he saw the plaintiff 6 to 8 feet to the west of the board when he became aware of the victim's plight immediately after the accident. Jennifer Sims and Stephen Gotch, both of whom were lifeguards on duty in other areas of the pool at the time of the accident, placed the location of the plaintiff from 9 to 12 feet to the west of the high board. Since the plaintiff had lost all power of locomotion, becoming immediately paralyzed by his collision with Dwight Williams, it is likely that the area in which these witnesses placed the plaintiff was the area of the collision.
No witnesses to the actual collision were produced so the best evidence of the site of the accident is the indirect testimony outlined above. Furthermore, the plaintiff did not examine Dwight Williams at the trial, so there was no testimony from him as to his location when struck by the plaintiff. It is well established in this State that the failure to call a witness who has knowledge of material facts pertinent to the resolution of the litigation gives rise to the presumption that the witness' testimony would have been unfavorable to the appellant. Morgan v. Matlack, Inc., 366 So.2d 1071 (La.App. 1st Cir. 1979), writ denied, 369 So.2d 1352 (La.1979); Walters v. Coen, 228 La. 931, 84 So.2d 464 (La.1955); Wolfe v. Employers Commercial Union Insurance Company, 272 So.2d 714 (La.App. 3rd Cir. 1973). Dwight Williams had a peculiar knowledge of the pertinent facts in this case, and in view of the fact that he was the plaintiff's cousin, the plaintiff could have readily obtained his presence for trial. Williams's testimony if it would have been favorable to the plaintiff would have helped plaintiff meet his burden of proof. Therefore, in the absence of this testimony, and in view of the strong circumstantial evidence placing the site of the accident to the right of the normal diving area and with insubstantial evidence to rebut this finding, we find that the finding of the triers of fact is not clearly wrong.

WAS THE VERDICT AND JUDGMENT OF THE TRIAL COURT CONTRARY TO THE LAW?
The plaintiff urges that the trial court based its ruling on an incorrect legal standard, particularly with reference to liability without fault, and that the instructions to the jury were based on the same incorrect statement of the law. The plaintiff asserts LSA-C.C. art. 2317 as one of the bases for liability of the defendant under the construction given to that article in Loescher v. Parr, 324 So.2d 441 (La.1975). Article 2317 provides for liability for damages caused by a person for whom one is responsible or by a thing in one's custody. The plaintiff argues both that the City of Lafayette was responsible for the person of Dwight Williams and that the diving board was a thing in the City's custody.
We find no merit in the plaintiff's argument that the City of Lafayette was answerable under Article 2317 for damages caused by the actions of Dwight Williams. By the express terms of that article, the *313 liability under Article 2317 is understood to be subject to the modification of the subsequent articles. These modifications are found in Articles 2318 through 2322 and impose liabilities such as those of employers for acts of servants (Article 2320), owners for acts of animals (Article 2321), and parents for acts of their children (Article 2318). Although counsel for the plaintiff sought to establish at trial that the lifeguards exercised a high degree of control over the person of Dwight Williams and other swimmers under their supervision, we do not find that the relationship between the lifeguards and swimmers is analogous to the strong relationships between those whose acts cause harm and those answerable for those acts under Article 2317.
We likewise find no merit in plaintiff's argument that the City of Lafayette is responsible for harm caused by the high diving board under Loescher v. Parr, supra. Loescher imposes liability upon one who has custody or care over the thing which causes harm, but only if that thing has a vice or defect which poses an unreasonable risk of harm and the harm incurred resulted from this vice or defect.
The only evidence presented at trial which could be construed to show that the diving board had a "defect" is that the board created a "blind spot" which partially obstructed the diver's view of the water. We do not feel, however, that this is a vice or defect of the board, but rather it is a condition inherent in all diving boards of which a reasonably prudent diver should be aware and which he should take into account in making his dive properly and safely. No evidence indicated the diving board was unusual or was different from the ordinary diving board customarily found in public swimming pools. Furthermore, the alleged "blind spot" created by the board does not create an unreasonable risk of harm. The defendants presented video tapes at trial which demonstrated that the diver could compensate for the blind spot by inclining his head a few inches to either side of the board and checking to see if the area in front of the board is clear before diving.
In fact, the plaintiff testified at trial that he did not bend over to look at the area underneath the diving board which he refers to as a "blind spot". As he was climbing the ladder to the high board, the plaintiff actually saw Dwight Williams swimming to the right but he did not check to see if Dwight had cleared the diving area. The plaintiff said that he knew he had to make sure the diver before him was clear of the diving area before he could dive himself but he relied on the lifeguard to clear the area instead.
Since the plaintiff's action in this case is one in negligence and not in "strict liability" under LSA-C.C. art. 2317 as we have held, the contributory negligence of the plaintiff is a bar to his recovery. Under the circumstances described above, we find ample evidence of the plaintiff's negligence which also supports the trial court judgment. The trial court, finding that the plaintiff had a duty of determining the safety of diving before doing so, stated that the plaintiff's failure to do this was an additional bar to his recovery. We agree.
The primary duty of care to ascertain whether or not it is safe to dive falls upon the diver. The lifeguard has a duty to maintain order in the pool for the patrons' safety and to respond quickly and appropriately to swimmers in danger. See Honeycutt v. City of Monroe, 253 So.2d 597 (La. App. 2nd Cir. 1971) and Williams v. City of Baton Rouge, 252 La. 770, 214 So.2d 138 (La.1968). In this case, the two lifeguards assigned to watch the diving area performed their duties non-negligently. Todd Courville was disciplining some rowdy children while glancing back at the diving area when the accident occurred. He responded quickly to rescue the plaintiff upon becoming aware of his plight. His failure to see the accident occurred because he was engaged in the performance of another of his duties at the time. Likewise, Pam Domingue did not see the collision because she was scanning another part of the diving area at the time. She had earlier observed Dwight Williams swimming to the right of *314 the high board and reasonably concluded that he posed no threat to the plaintiff.
Furthermore, the plaintiff in this case knew of the danger of diving into an area before checking to see if the area was clear of swimmers, yet failed to take this precaution for his safety, relying instead upon the lifeguards' duty to keep the diving area clear. Under these circumstances the "contributory negligence" of the plaintiff rises to the level of primary negligence in his failure to provide for his own safety.
The plaintiff makes a final argument that, even if he is found to have been contributorily negligent, he should still be allowed to recover because the lifeguards had the "last clear chance" to prevent the accident. The last clear chance doctrine was designed to allow a plaintiff to recover against a negligent defendant despite his own contributory negligence which ordinarily would operate as a complete bar to his recovery. Baumgartner v. State Farm Mutual Automobile Insurance Company, 356 So.2d 400 (La.1978). Since we have held that the lifeguards were not negligent, the last clear chance doctrine is clearly inapplicable.
The trial court in its reasons for judgment implied that the lifeguards had the primary duty to insure that the diving area was clear before allowing anyone to dive. Even under that formulation of duty, the trial court found that the plaintiff's dive was not covered by the lifeguards' duty and the jury found the defendants to be non-negligent.
We find no manifest error in the judgment complained of. Therefore, we affirm the trial court's ruling. The costs of this appeal are assessed to appellant.
AFFIRMED.

ON APPLICATION FOR REHEARING
PER CURIAM.
Plaintiff-appellant's application for rehearing is denied.
In plaintiff-appellant's application for rehearing numerous assignments of errors are made on behalf of plaintiff-appellant. Among his assignments plaintiff complains of the adverse presumption applied against him on the ground that plaintiff did not call Dwight Williams as a witness in his behalf. In the application on behalf of plaintiff-appellant the following statement is made:
"The record in this cause demonstrates that Dwight Williams was at the Courthouse under subpoena. The record of this cause further demonstrates that during the course of the trial counsel for both plaintiff and defendants left the Courtroom to make measurements of Dwight Williams's physical characteristics and returned into Court and entered into a stipulation as to these physical characteristics. Thus, Dwight Williams was equally available to the defendants. In such a circumstance there can be no unfavorable presumption against plaintiff. The rule of law applicable is absolute to the effect that where a witness is equally available, no presumption arises from the failure of either party to present such a witness."
If one may conclude from the record that Dwight was at the courthouse during the trial and thus was available to be called as a witness for both sides, then we did err in applying the presumption. We have followed the rule that no inferences or presumptions are to be indulged in for a party's failure to call an available witness if the witness was equally available to both sides. Rushing v. Insurance Company of North America, 391 So.2d 864, (La.App. 3rd Cir. 1980) and Slocum v. American Casualty Insurance Company, 189 So.2d 299 (La.App. 3rd Cir. 1966). Without re-examining the record on this appeal with reference to this specific point, we have considered our opinion on original hearing and have concluded that our holding can rest on all other reasons given by us without applying the presumption complained of.