489 So.2d 1346 (1986)
Danny E. VAN PELT
v.
MORGAN CITY POWER BOAT ASSOCIATION, INC., et al.
No. 85 CA 0195.
Court of Appeal of Louisiana, First Circuit.
May 28, 1986.
Writ Granted September 19, 1986.
*1348 Nicholas F. Larocca, Jr., Lippman, Mahfouz, Martin & Larocca, Morgan City, for plaintiff-appellant.
Edwin G. Preis, Jr., Andrus, Preis & Kraft, Lafayette, for Morgan City Power Boat Assoc., and Intern. Surplus Lines Ins. Co., defendant-appellee.
Kai David Midboe and David C. Kimmel, Asst. Attys. Gen., Dept. of Justice, Baton Rouge, for State of La., defendant appellee.
Robert M. Mahony, Onebane Firm, Lafayette, for Mayor Cedric Lafleur and Councilmen of Morgan City-defendant/appellee.
J. Louis Gibbens, Gibbens & Blackwell, New Iberia, for St. Martin Parish Police Jury defendant/appellee.
Before GROVER L. COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
This is an appeal by Danny Van Pelt (plaintiff) from summary judgments dismissing his claims against the Mayor and Councilmen of Morgan City (City), the St. Martin Parish Police Jury (Parish), the State of Louisiana (State), and the Morgan City Power Boat Association (Association) and its insurer, International Surplus Line Insurance Company (Surplus Line).
On May 22, 1982, plaintiff and friends paid their admission fee and attended boat races held on Lake Palourde under the auspices of the Association. About 4:15 p.m., plaintiff and his girl friend decided to cool off. They walked to an area where cement bags had been placed along the shore to prevent erosion. Plaintiff dove into the water and broke his neck. He sued the State (the owner of the lake bed), the City (the State's lessee), the Association (the sponsor of the event), Surplus Line (the Association's insurer), and St. Martin Parish (where the accident occurred).
After argument at hearings on the defendants' motions for summary judgment and after a review of affidavits, depositions, and other evidence presented, the trial court granted the defendants' motions. The court was convinced that LSA-R.S. 9:2791[1] and LSA-R.S. 9:2795[2] entitled defendants *1349 to summary judgment. Plaintiff's appeal raises the following questions for review:
(1) Are LSA-R.S. 9:2791 and 9:2795 constitutional?
(2) Are the statutes inapplicable because defendants failed to warn plaintiff of the danger of injury?
(3) Are the statutes inapplicable because defendants operated a commercial recreational development or facility?
(4) Are the statutes inapplicable because defendants increased the natural danger of the premises?
(5) Are the statutes inapplicable because plaintiff's harm resulted from a violation of a servitude rather than from delictual activity?
(6) Are the statutes inapplicable because the accident occurred on premises not covered by the statute?
(7) Are the statutes inapplicable to the insurer of an owner or occupant of the premises?
Because of their similarity, we will discuss the statutes together, as the Supreme Court did in Keelen v. State, Department of Culture, Recreation and Tourism, 463 So.2d 1287 (La.1985), and Landry v. Board of Levee Commissioners of Orleans Levee District, 477 So.2d 672 (La.1985). But we note that LSA-R.S. 9:2791 excludes from its coverage "deliberate and willful or malicious injury" (emphasis supplied); LSA-R.S. 9:2795 excludes "willful or malicious failure to warn against a dangerous condition, use, structure or activity." (Emphasis supplied.)
ISSUE ONE
Article 12, Section 10 of the Louisiana Constitution of 1974 contains the following prohibition:
Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.
Plaintiff interprets this provision to mean that LSA-R.S. 9:2791 and LSA-R.S. 9:2795 relieve only private "owners" of liability. He argues that to free the State, City or Parish of liability would be contrary to the constitutional prohibition. This argument was rejected in Pratt v. State, 408 So.2d 336 (La.App. 3rd Cir.1981), writ denied, 412 So.2d 1098 (La.1982). The Pratt court reasoned that LSA-R.S. 9:2795 extended immunity to any landowner, public or private; since the immunity is not dependent on sovereignty, it does not violate the constitutional principle. We find this reasoning convincing and hold that the statutes may constitutionally be applied to public bodies as they were in Thomas v. Jeane, 411 So.2d 744 (La.App. 3rd Cir.1982); and in LaCroix v. State, Department of Transportation, 477 So.2d 1246 (La.App. 3rd Cir. 1985), writ denied, 478 So.2d 1237 (La. 1985); and as LSA-R.S. 9:2795 was in Rodrigue v. Firemen's Fund Insurance Company, 449 So.2d 1042 (La.App. 5th Cir. 1984), and Pratt.
ISSUE TWO
This issue concerns only LSA-R.S. 9:2795 and its exemption for "willful or malicious failure to warn against a dangerous condition, use, structure, or activity." Plaintiff advances this position: At least some of the defendants consciously decided not to *1350 give him any warning of the shallow water near the shore of Lake Palourde, amounting to a willful failure to warn of a dangerous condition, use, structure, or activity. So the statute does not protect these defendants.
Plaintiff argues that by including the clause quoted above, the Legislature imposed upon the owner a duty to warn; should the owner fall short of that duty, he cannot receive the benefit of the statute. We must determine what the Legislature intended the scope of that duty to be and who falls within that scope.
Before Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367 (La.1976), in a typical tort action plaintiff would have been regarded as an invitee. The owner had a duty to warn an invitee only of those dangers which were not so apparent that the invitee would be reasonably expected to discover them. Ainsworth v. International Paper Company, 311 So.2d 629 (La.App. 3rd Cir.1975). After Cates, labeling of the victim's status became merely a factor in determining the reasonableness of the danger, for the owner's duty is now to warn of unreasonably dangerous conditions. Shelton v. Aetna Casualty and Surety Company, 334 So.2d 406 (La.1976). Shelton held that an owner is not liable for injury resulting from a condition which should have been observed by a visitor or which was as obvious to the visitor as to the landowner. There is no liability because there is no breach of duty. Shelton, 334 So.2d at 410. Accord Ruffo v. Schwegmann Brothers Giant Supermarkets, Inc., 424 So.2d 470 (La.App. 5th Cir.1982).
Addressing directly the scope of landowner duty in cases involving diving injuries, we held in Caillouette v. Cherokee Beach & Campgrounds, Inc., 386 So.2d 666 (La.App. 1st Cir.1980), writ denied, 387 So.2d 597 (La.1980), that a landowner is not required to warn of the obvious danger of diving into unknown waters. See also Tobey v. State, 454 So.2d 144 (La.App. 1st Cir.1984). In Haney v. General Host Corporation, 413 So.2d 624, 626 (La.App. 1st Cir.1982), we ruled that a factor in determining the reasonableness of the danger was the ease with which the plaintiff could discover the danger. In this case, plaintiff needed only to walk a few feet into the water to discover that it was shallow. Indeed, the primary duty of care in ascertaining whether it is safe to dive is upon the diver. Jolivette v. City of Lafayette, 408 So.2d 309 (La.App. 3rd Cir.1981), writ denied, 413 So.2d 495 (La.1982), cert. denied, 459 U.S. 867, 103 S.Ct. 147, 74 L.Ed.2d 124 (1982).
Thus we must ask: did the Legislature intend to impose upon landowners covered by LSA-R.S. 9:2795 a duty to warn that is greater than that imposed in a traditional tort action? The purpose of the statute is to encourage the opening of lands for recreational uses. Keelen, 463 So.2d at 1289; Landry, 477 So.2d at 673; La. Acts 1975, No. 615, § 1. Plaintiff would have us hold that in order to achieve this goal the Legislature relieved the landowner of liability but increased his duty to warn; to benefit from the statute, the owner would have to warn of the most obviously riskful conditions or activities. Specifically, owners of shallow ponds or lakes or rivers or creeks or bayous would have to post warnings at all possible diving points that the water is dangerously shallow.[3] Presumably, if the water is deep, the owners would then have to warn of the danger of drowning. If a tree is tall, the owner would have to warn against the danger of climbing. This will encourage owners to open their lands? To state the argument is to refute it.
Additionally, the statute declares that the owner neither extends assurances that the premises are safe for any purpose nor constitutes one visiting his property an invitee or licensee to whom a duty of care is owed. LSA-R.S. 9:2795 B(1) and (2). True, the owner must make the premises reasonably safe for the invitee, but as we noted earlier, this duty owed invitees "was only to correct or warn [plaintiff] against dangers not known to the invitee or those which were not so obvious and apparent that the invitee would be reasonably expected *1351 to discover." Ainsworth, 311 So.2d at 631. In Lear v. United States Fire Insurance Company, 392 So.2d 786 (La. App. 3rd Cir.1980), the court ruled that owners did not breach their duty to warn a guest injured when struck by a baseball, because the danger was obvious and of the type that should have been observed by an individual in the exercise of reasonable care.
In light of these decisions, finding that the defendants here breached a duty owed this plaintiff (who had often been swimming in Lake Palourde and knew that parts of it were shallow), would be inconsistent with the legislative intent embodied in LSA-R.S. 9:2795 B(1) and (2). Such a finding would impose a significantly greater duty on defendants than the duty they owed invitees under the pre-Cates law. Imposing such a duty when the Legislature has specifically determined that plaintiff is not an invitee would vitiate the Legislature's will. We hold that LSA-R.S. 9:2795 imposes no duty on these defendants to warn this plaintiff under the facts of this case and that they are not excluded from the statute's coverage because of any failure to warn this plaintiff.
ISSUE THREE
The statutes exclude from their coverage owners of commercial recreational developments or facilities. Plaintiff contends that the Association intended to make a profit from the race; thus, it was operating a commercial activity and subject to liability. Plaintiff further argues that the Association's profit motive should be ascribed to all other defendants because the Association was the occupant of the premises at the time of the accident.
We note initially that the fact that an activity generates income does not prevent the owner from enjoying the benefit of LSA-R.S. 9:2795, which clearly provides that an owner may charge a fee for the right to use his land and still not incur liability. Therefore, the fact that the Association collected an admission does not alone establish that the race was a commercial activity.
The cases that have considered the matter have held that intention to derive a profit is an essential ingredient in a commercial activity. Keelen, 463 So.2d at 1289; Pratt, 408 So.2d at 342; Thomas v. Jeane, 411 So.2d at 747. It is undisputed that none of the public bodies made defendant here received any payment from the races much less derived a profit from them. As to the Association, it is a non-profit corporation, described by members as a club that encouraged boat racing in the area. The uncontradicted testimony of officers and members of the Association was to the effect that it used any funds it received to defray the expenses of its activities (primarily races such as that staged the day of plaintiff's accident); what was not immediately spent in that way was saved to be used on similar activities in the future. We believe that the Association is not "an owner of commercial recreational developments or facilities" and thus that exception does not exclude it from the statutes' coverage.
Having found that the Association was not operating a commercial development at the time of the accident, we need not address plaintiff's contention that the Association's profit motive should be ascribed to the other defendants.
ISSUE FOUR
Plaintiff founds this argument on Smith v. Crown-Zellerbach, Inc., 638 F.2d 883 (5th Cir.1981). The Smith court held that LSA-R.S. 9:2791 did not relieve landowners of liability for attractive nuisances. Plaintiff cites the following language to support his position that improvements to the shoreline of the lake (including cement-filled bags) where the accident happened increased the danger and thus make the statutes inapplicable:
Thus the legislature intended to absolve property owners from the kind of accidents normally to be expected when they let others use their property for recreational purposes and not to remove their liability when they maintain attractive nuisances unrelated to the recreational purpose or when they otherwise increase *1352 the danger naturally found on the property.
Smith, 638 F.2d at 885.
Two deficiencies in plaintiff's argument are immediately evident: the federal court's interpretation of Louisiana's law is not binding on Louisiana courts, and the statement quoted is dictum. But even ignoring these objections, we do not find plaintiff's interpretation persuasive. The accident that caused plaintiff's injury is normal to the recreational use of areas such as Lake Palourde. We believe the Smith court did not mean to exclude such accidents, but rather did mean to exclude accidents caused by circumstances not commonly encountered in the true outdoors. See Keelen, 463 So.2d at 1291. Also, improvements such as these, designed to prevent erosion and undermining of the lakeshore, are "structures attached to the realty" and therefore encompassed within the definition of "land" in LSA-R.S. 9:2795 A and "premises" in LSA-R.S. 9:2791 C.[4]
Indeed, were plaintiff's reading of the statutes uniformly enforced, an owner who built a pond on his land would be denied the protection of the statutes because he thereby increased the natural danger. Surely such a result runs contrary to the statutes' purpose: "to encourage owners of land to make land and water areas available to the public for recreational purposes." La. Acts 1975, No. 615, § 1. Keelen, 463 So.2d at 1289-1290.[5]
ISSUE FIVE
In this ingenious argument plaintiff asks this court to adopt the following reasoning: At least some of the defendants violated his right to use the area where the accident occurred. LSA-C.C. arts. 452 and 458. That violation is non-delictual. The statutes that defendants invoke concern only delicts; therefore they are inapplicable to this violation.
We reject this position. LSA-C.C. art. 458 is addressed to works obstructing the public use which "are built without lawful permit."[6] Plaintiff has neither alleged nor offered evidence to show that any obstructions are "without lawful permit." Also, plaintiff asks for damages to compensate him for personal injuries; the codal provisions he cites contemplate removal of the unlawful obstruction as the appropriate remedy.
Additionally or alternatively, plaintiff urges that we find a non-delictual violation of the guarantees of LSA-C.C. art. 667. We need not decide whether that article rests on delictual or other legal theories. Plaintiff brings a claim arising from a wrong exclusively tortious in nature; LSA-R.S. 9:2791 and 9:2795 unquestionably address tortious wrongs and apply to the circumstances involved here.
ISSUE SIX
Recent decisions of our Supreme Court make it clear that a court must determine the nature of the land involved before it can decide that the statutes apply. The court in Keelen ruled that the statute does not extend to include to all landowners; rather:
the legislature intended to confer immunity upon owners of undeveloped, nonresidential rural or semi-rural land areas. The size, naturalness and remoteness or insulation from populated areas all attribute to the categorization of property as rural or semi-rural.
Keelen, 463 So.2d at 1290.
In Landry the court found the statutes inapplicable because the premises on which the plaintiff's activities occurred were not within the purview of the statutes:

*1353 The Legislature surely did not intend to cloak with immunity the owner of such property as is involved here, a recreational area within a populated city, adjacent to a much travelled Lakeshore Drive, and within a stone's throw of an exclusive residential area developed in the City of New Orleans many years ago.
Landry, 477 So.2d at 675.
Although the site of this accident is clearly more rural and undeveloped than that in Landry, the question of the character of the land was not much addressed in the record before us. However, a Lake Palourde Park Master Development Plan prepared by Environomics, Inc., in 1984 was introduced. It contains a detailed description of the area, including Lake Front Parkway, where the accident occurred, and Lake End Park, a picnic and camping facility southwest of the Parkway. The study revealed that the nearest residential concentration is about one-half mile southwest of Lake End Park and that only occasionally do pedestrians visit the Park. We recognize the proximity of the area to Morgan City, but we conclude that this natural, 18-square-mile lake, with improvements that "are merely conveniences incidental to the use of the land for enumerated recreational activities and [which] do not of themselves take property out of a rural, undeveloped classification" is the type of rural or semi-rural area envisioned by the statute. Keelen, 463 So.2d at 1290.
ISSUE SEVEN
The plaintiff addresses this argument only to Surplus Line, the Association's insurer. His contention is that even if the statutes apply to the Association, they do not apply to exempt its insurer from liability. To frame the issue in other words, do the statutes merely grant a personal immunity to the Association, an immunity which does not extend to Surplus Line?
Plaintiff answers yes, believing the immunity to be personal, as is the parents' immunity to suit by their children and one spouse's immunity to suit by the other. Danzy v. United States Fidelity & Guaranty Company, 380 So.2d 1356 (La.1980); LSA-R.S. 9:571 and 9:291. These statutes provide that the child "cannot sue" and that the spouse "may not sue." They "necessarily recognize the existence of a cause of action." Deshotel v. Travelers Indemnity Company, 257 La. 567, 243 So.2d 259 (1971). Quite unlike those statutes are the ones in question here: "an ... occupant... does not ... incur liability for any injury." LSA-R.S. 9:2791. "An owner does not ... incur liability for any injury." LSA-R.S. 9:2795.
Under the familial immunity statutes a person is merely prevented from suing; under the recreational area statutes, however, the Legislature has eliminated landowner liability. The familial immunity statutes do not bar suit or recovery against a parent's or a spouse's insurer. See Deshotel, 243 So.2d at 260. But because the recreational area statutes preclude liability on the part of the owner, they stand as a bar to recovery against the owner's insurer. If the owner has incurred no liability, how can it be said that the insurer, which must pay only if the owner is liable, can be cast in judgment?
The Danzy court determined that denying an insurer (a codebtor in solido with its insured) the personal defenses of the insured was based on LSA-C.C. art. 2098 (now art. 1801), "which provides that the codebtor `cannot plead such exceptions as are merely personal to some of the other codebtors.'" Danzy, 380 So.2d at 1359. However, former Article 2098 allows the insurer to plead "a defense resulting from the nature of the obligation." The Legislature has determined that the "nature of the obligation" here involved is such that the occupant incurs no liability; therefore, the plea of no liability under the recreational area statutes may be invoked by the insurer.
Danzy cites with approval Edwards v. Royal Indemnity Co., 182 La. 171, 161 So. 191 (1935), which interpreted the Direct Action Statute and LSA-C.C. art. 2098 as allowing the insurer those defenses it could plead against its insured, excepting defenses *1354 "purely personal between the insured and the claimant."
In short, if the insured pays a claim to a third person whom he injured, the insurance company would have the right to refuse to reimburse the insured, in the event the insured paid the claimant when there was no liability. For instance, if the insured were free from fault or if the claimant were guilty of contributory negligence, the insurer could resist the insured's claim for reimbursement.
Edwards, 161 So. at 192.
Just as the plea of contributory negligence redounds to the benefit of the insurer, so does the plea of "no liability" under the recreational area statutes. See also Nations v. Morris, 331 F.Supp. 771 (E.D.La. 1971). If the insurer may plead "no liability" against its insured were the insured to sue it for reimbursement, it follows that Surplus Line may plead "no liability" in the present action.[7]
CONCLUSION
For the foregoing reasons we agree that there is no genuine issue of material fact as to the applicability of the recreational area statutes to all these defendants and that they are entitled to summary judgments as matter of law. LSA-C.C.P. art. 966. The judgment of the trial court is affirmed at plaintiff's cost.
AFFIRMED.
NOTES
[1] LSA-R.S. 9:2791 provides:

"A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant give permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or property, nor does it create any liability where such liability does not now exist. Furthermore the provisions of this Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section.
C. The word `premises' as used in this Section includes lands, roads, waters, water courses, private ways and buildings, structures, machinery or equipment thereon.
[2] LSA-R.S. 9:2795 provides:

"A. As used in this Section:
(1) `Land' means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.
(2) `Owner' means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
(3) `Recreational purposes' includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.
(4) `Charge' means the admission price or fee asked in return for permission to use lands.
(5) `Person' means individuals regardless of age.
B. Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(1) Extend any assurance that the premises are safe for any purposes.
(2) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(3) Incur liability for any injury to person or property incurred by such person.
C. Unless otherwise agreed in writing, the provisions of Subsection B shall be deemed applicable to the duties and liability of an owner of land leased for recreational purposes to the federal government or any state or political subdivision thereof or private persons.
D. Nothing in this Section shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this Act to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care."
[3] The cost of such warnings could well mean that the statute would almost never be applied.
[4] See LaCroix, 477 So.2d at 1247, 1250, in which a plaintiff dove from a State-installed culvert and broke her neck. The culvert was clearly an unnatural structure, but the court found that the State incurred no liability based on LSA-R.S. 9:2791 and 9:2795.
[5] It is conceivable that plaintiff seeks also to invoke the attractive nuisance doctrine. Suffice it to say that said doctrine does not protect this 22-year-old man. "[A]pplication of this doctrine necessarily includes a finding that the injured child was too young to understand and avoid the danger." Walker v. Union Oil Mill, Inc., 369 So.2d 1043, 1048 (La.1979).
[6] In his brief, plaintiff does not state what the obstructing works might be.
[7] Plaintiff urges us to exempt Surplus Line from the statute's coverage because, he argues, it was essentially insuring the Association when, under the statute, the Association had no exposure. See Rome v. London & Lancashire Indemnity Co. of America, 169 So. 132, 137 (La.App. Orleans 1936). We believe both landowner and insurer face potential risks, since it is not always clear when the statute will apply to preclude liability:

We appreciate how difficult it is to assess these statutes in the context of the myriad cases which can and will arise. It is surely an area ripe for legislative attention.
Landry, 477 So.2d at 675. We find it impossible to evaluate this argument because the policy is not part of the record. However, had another injury during the races been caused by an instrumentality not of the type "commonly found in the true outdoors," the statute would not apply and Surplus Line's liability coverage would probably have been triggered. Keelen, 463 So.2d at 1291. See also Wadsworth v. Town of Berwick, 484 So.2d 762 (La.App. 1st Cir.1986). At any rate, our interpretation of the statutes as extending to insurers is dispositive of this issue.