787 So.2d 326 (2000)
David W. JOHNSON and Angela L. Johnson, Individually and as Representative of Their Minor Child, Aron Johnson, Deceased
v.
The CITY OF MORGAN CITY, and State of Louisiana, Through the Department of Wildlife and Fisheries.
No. 99 CA 2968.
Court of Appeal of Louisiana, First Circuit.
December 22, 2000.
Writ Denied March 16, 2001.
*327 Conrad S.P. Williams, Joseph G. Jevic, III, Houma, Counsel for PlaintiffsAppellants *328 David W. Johnson and Angela L. Johnson, Individually, etc.
Andrew H. Meyers, Michael G. Lemoine, Lafayette, Counsel for Defendant AppelleeThe City of Morgan City.
Debra K. Basile, Assistant Attorney General, Lafayette, Counsel for Defendant AppelleeThe State of Louisiana, Through the Department of Wildlife and Fisheries.
Before: FOIL, FITZSIMMONS, and GREEN[1], JJ.
FITZSIMMONS, Judge.
Petitioners, David and Angela Johnson, individually and as representative of their minor child, Aron Johnson, appeal from the grant of summary judgment in favor of defendants, the City of Morgan City (City) and State of Louisiana, through the Department of Wildlife and Fisheries (State). The Johnsons asserted their action against the City and State on the basis of negligence and fault. The trial court's summary judgment found the City and State immune from suit pursuant to La. R.S. 9:2791 and La. R.S. 9:2795. After a review of the facts and the law, this court affirms the lower court.
On July 24, 1997, Aron Johnson drowned while swimming when he stepped into a hole at the bottom of Lake Palourde, a natural freshwater lake. Lake Palourde is located adjacent to, and east of, Morgan City, Louisiana. It is owned by the State; however, the City owns Lake End Park and the beach, which abuts the lake. The City additionally maintains jurisdiction over the lake, including a roped off portion where Aron was swimming. Lake End Park and Lake Palourde were developed by the City for recreational use pursuant to a master plan development prepared in 1984. In the master plan, it is noted that recreational use of Lake Palourde is very popular, and water activities include: "boating, boat racing, skiing, sailing, swimming and fishing."
Limitation of liability is statutorily afforded to owners and operators of property used for recreational purposes pursuant to La. R.S. 9:2791 and 9:2795. The provisions of La. R.S. 9:2791 relieve an owner, lessee or occupant of premises from the duty of care to keep the premises safe for entry or use by others for recreational purposes, absent willful or malicious injury to persons or property when the premises are used for commercial enterprise. "Waters" and "watercourses" are encompassed in the statutory definition of "premises." La. R.S. 9:2791 C. Louisiana Revised Statute 9:2795 grants a private owner immunity from liability in certain recreationally related instances. Additionally, Section E of that statute provides that "[t]he limitation of liability ... shall apply to any lands or water bottoms owned, leased or managed by the Department of Wildlife and Fisheries, regardless of the purposes for which the land or water bottoms are used, and whether they are used for recreational or nonrecreational purposes." The definition of "land" encompasses land, water and watercourses. La.R.S. 9:2795 A.(1). Moreover, "recreational purposes" includes swimming. La.R.S. 9:2795 A.(3). Limitation of liability is afforded to owners of commercial recreational developments when the injury arising out of the recreational activity "occurs on land which does not comprise the commercial recreational development or facility and over which the owner has no control when the recreational *329 activity commences, occurs, or terminates on the commercial recreational development or facility." Thereafter, section E.(2)(a) extends the limitation of liability to "any lands owned, leased, or managed as a public park by the state or any of its political subdivisions and which is used for recreational purposes." The exceptions are intentional or grossly negligent acts by an employee of the public entity, which are fatal to the application of the statutory protection. La.R.S.9:2795 E.(2)(d). The precepts of La. R.S. 9:2791 and 9:2795 thus clearly apply to public bodies such as the state, a city or a parish. La.R.S. 9:2795 E.
Following Keelen v. State Department of Culture, Recreation and Tourism, 463 So.2d 1287 (La.1985), the courts have been obligated to conduct a complete analysis of the property in question before concluding that the Recreational Use Statutes apply. Deumite v. State, 94-1210 (La.App. 1 Cir. 2/14/97), 692 So.2d 1127, 1133 (on remand), writ denied, 97-1409 (La.9/26/97), 701 So.2d 984. The jurisprudentially established test is comprised of three parts. First, the property upon which the injury occurs must be an "undeveloped, nonresidential, and rural or semirural" locale. Second, the injury itself must be the result of recreation that can be pursued in the "true outdoors." Third, the injury-causing instrumentality must be of the type normally encountered in the true outdoors and not the type usually found in someone's backyard. Id., citing Singletary v. Zellerbach, 554 So.2d 846 (La.App. 1st Cir.1989) and Ratcliff v. Town of Mandeville, 502 So.2d 566 (La. 1987).
This court has previously concluded that Lake Palourde and Lake End Park are the type of rural or semi-rural areas envisioned by the statute. Van Pelt v. Morgan City Power Boat Association, Inc., 489 So.2d 1346, 1353 (La.App. 1st Cir. 1986), writ granted, 493 So.2d 627 (La. 1986) (cause dismissed). The first criterion is thus met.
It is also undisputed that Lake Palourde falls within the classification of "recreational area." The lake is widely used by the public for fishing, boating and swimming. As previously noted, swimming is included in the list of recreational activities delineated in La. R.S. 9:2795. In this instance, a portion of the lake is roped off by a buoy line to prevent access by boats into the area near the beaches. Signs are posted, in the vicinity of the drowning, that warn the public that the water is shallow and no diving is permitted. At least one "swim at your own risk" sign is also displayed.
The activity of swimming in a natural lake satisfies the second prong of the Recreational Use Statute test. The manager of the Land End Park, Clyde Alexander, who waded out into Lake Palourde and found Aron, stated that he had not been previously aware of the existence of a hole at the bottom of the lake in the area in question. Although the petition depicted the hole as extending twelve feet down, Mr. Alexander described the drop-off as extending one and one half to two feet deeper than the bottom of the surrounding area of water: the bottom of the hole would thus be four and a half to five feet from the surface of the water. There is a contrast between the hole and the sand bottom in the rest of the swimming area. The composition of the indentation created by the hole was described as consisting of soft mud with vegetation and roots. It was speculated that the hole was created when a cypress tree stump rotted.
The critical issue confronting this court in the present case is whether the placement of a buoy line to cordon off the boaters from the area in which Aron Johnson was swimming removed the designated *330 swimming area from the domain of the Recreational Use Statutes. We have previously noted that the pertinent inquiry is not whether the injury-causing instrumentality is man-made, or partially created by human action or inaction, but whether the instrumentality is of a "type" normally found in the true outdoors. Deumite, 692 So.2d at 1135. After careful consideration of the characteristics of the park and the lake, with its roped-in area, we do not find that the mere placement of a buoy line alters the characteristics of the swimming area to the degree that it is no longer an open and undeveloped expanse of property. Lake Palourde and the swimming area under scrutiny remain a natural body of water, distinguishable from a swimming pool, as was the situation in Keelen.
In Deumite, 692 So.2d at 1138, this court found that artificial alteration of a natural body of water's depth and controlled vegetation by spraying did not make the lake "developed" property. In this instance, the placement of the buoy line provides a convenience incidental to the use of the lake for recreational activities. It is analogous to a boat launch, a fenced-in shell beach or wooden boards nailed to the trunk of a tree to form steps to a homemade diving platform. Such improvements do not remove the properties from their rural, undeveloped classifications. See Van Pelt, 489 So.2d at 1352; Stuart v. City of Morgan, 504 So.2d 934, 940 (La. App. 1st Cir.1987); Adams v. State, 525 So.2d 55, 57-58 (La.App. 3rd Cir.1988).
Excluded from the protective grant of immunity in the Recreational Use Statutes are intentional or grossly negligent acts by an employee of a public entity. La.R.S. 9:2795 E(2)(d). It is alleged that the City's failure to have taken prior measurements to fill the hole constituted intentional or gross negligence. The Johnsons point to a previous occurrence in Lake Palourde. Twelve years prior to the instant matter, a person drowned as a result of a hole in the lake. It is alleged that the other incident transpired in the same location of Lake Palourde; however, the record only substantiates that the incident occurred in an area identified as a swimming location. In Clyde Alexander's testimony in 1998, he states that there is only one designated swim area, but the evidence lacks adequate information to conclude that Aron Johnson slipped in the same underwater hole as had another person twelve years previously. Mr. Alexander also testified that he had been unaware of the existence of the hole in the swim area at the time that Aron Johnson drowned. Mr. Alexander further stated that, during the nine-year period that he had been park manager, there had been no reference by the public to the hole; nor had there been complaints about the condition of the lake.[2] Thus, the trial court did not err in its implicit finding that the facts failed to support the existence of "entire," "utter," "complete," or "extreme" lack of care or "conscious indifference" to the consequences necessary for gross negligence or willful misconduct by the State or City. Mullins v. State Farm Fire and Casualty Co., 96-0629 (La.App. 1 Cir. 6/27/97), 697 So.2d 750, 754; see also Price v. Exxon Corporation, 95-0392 (La.App. 1 Cir. 11/9/95), 664 So.2d 1273, 1280.
It is, additionally, noted that the existence of a hole in a natural lake, that renders the depth of the lake deeper than other portions, would not, ipso facto, constitute a defective condition. The hole at issue is located approximately seventy-five feet from the beach. Although the City warned swimmers not to dive into the lake because the water was shallow, variations *331 in water depth within natural swimming areas are standard. Thus, notwithstanding the existence of governmental immunity, there has been no showing of an unreasonable risk pursuant to the facts presented in this matter.
Accordingly, the trial court grant of summary judgment is affirmed. All costs associated with this appeal are assessed to David and Angela Johnson.
AFFIRMED.
NOTES
[1] Honorable Alan J. Green is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] All complaints were supposed to be brought to Mr. Alexander's attention.